1  PETER R. BOUTIN, CASB No. 65261
   peter.boutin@kyl.com
2  NATHAN R. JASKOWIAK, CASB No. 248007
   nathan.jaskowiak@kyl.com
3  KEESAL, YOUNG & LOGAN
   A Professional Corporation
4  450 Pacific Avenue
   San Francisco, California  94133
5  Telephone:   (415) 398-6000
   Facsimile:   (415) 981-0136
6
   Attorneys for Defendants
7  CITIGROUP INC. and CITIGROUP GLOBAL MARKETS INC.
   (erroneously sued herein as CITIGROUP SMITH BARNEY)
8
                  **UNITED STATES DISTRICT COURT**
9
                **NORTHERN DISTRICT OF CALIFORNIA**
10

11  GERARDO B. CHANG,                    ) Case No. C 09-2966 SI
                                         )
12                      Plaintiff,       ) **DEFENDANTS CITIGROUP INC. AND**
                                         ) **CITIGROUP GLOBAL MARKETS**
13         vs.                           ) **INC.'S REQUEST FOR JUDICIAL**
                                         ) **NOTICE**
14  CITIGROUP INC., CITIGROUP SMITH      )
    BARNEY, CITIGROUP GLOBAL             ) Date: October 16, 2009
15  MARKETS, INC., AND DOES 1 TO 5,      ) Time: 9:00 a.m.
                                         ) Dept: Courtroom 10
16                      Defendants.      )       The Hon. Susan Illston
                                         )
17                                       )
                                         )
18                                       )
                                         )
19  _____  )

20         Defendants CITIGROUP INC. and CITIGROUP GLOBAL MARKETS INC.

21  f/k/a/ Salomon Smith Barney Inc. and erroneously sued herein as CITIGROUP SMITH

22  BARNEY (collectively referred to as "Defendants" or "CGMI") hereby request pursuant

23  to Rule 201 of the Federal Rules of Evidence that the Court take judicial notice of the

24  following cases set forth in the complaint of Plaintiff GERARDO B. CHANG ("Mr.

25  Chang"):

26
           (1)  <u>Chang v. Lynch et al.</u>, Superior Court of California – County of San
27
    Francisco, case number CUD-05-614414 (filed May 31, 2005) (a copy of the Complaint

28

                                   - 1 -                        KYL_SF487665
   DEFENDANTS CITIGROUP INC. AND CITIGROUP GLOBAL MARKETS INC.'S REQUEST FOR
   JUDICIAL NOTICE - CASE NO. C 09-2966 SI

1   attached as Exhibit "1");

2           (2)  <u>Chang v. Chang</u>, Superior Court of California – County of San

3   Francisco, case number CGC-05-443288 (filed July 21, 2005) (a copy of the Complaint

4   attached as Exhibit "2");

5

6           (3)  <u>Chang v. City and County of San Francisco</u>, Superior Court of

7   California – County of San Francisco, case number CGC-05-444715 (filed Sept. 8, 2005)

8   (a copy of the Complaint attached as Exhibit "3");

9           (4)  <u>Chang v. Chang</u>, Superior Court of California – County of San

10  Francisco, case number CUD-05-615866 (filed Sept. 22, 2005) (a copy of the Complaint

11  attached as Exhibit "4");

12

13          (5)  <u>Chang v. Greater Bay Bancorp</u>, United States District Court – Northern

14  District of California, case number 05-cv-05166-CW (filed December 13, 2005) (a copy of

15  the Complaint attached as Exhibit "5");

16

17          (6)  <u>Chang v. Goldstein, Gellman, Melbostad, Gibson and Harris LLP</u>,

18  Superior Court of California – County of San Francisco, case number CGC-06-448410

19  (filed January 9, 2006) (a copy of the Complaint attached as Exhibit "6").

20

21  DATED:  August 28, 2009          <u>/s/ Nathan R. Jaskowiak</u>
                                      PETER R. BOUTIN
22                                    NATHAN R. JASKOWIAK
                                      KEESAL, YOUNG & LOGAN
23                                    ATTORNEYS FOR DEFENDANTS
                                      CITIGROUP INC. AND CITIGROUP
24                                    GLOBAL MARKETS INC.

25

26

27

28
                                  - - 2 - -                        KYL_SF487665
    DEFENDANTS CITIGROUP INC. AND CITIGROUP GLOBAL MARKETS INC.'S REQUEST FOR
    JUDICIAL NOTICE - CASE NO. C 09-2966 SI

Exhibit "1"



San Francisco Superior Courts
Information Technology Group

## Document Scanning Lead Sheet

May-31-2005  3:27 pm

Case Number: CUD-05-614414

Filing Date: May-31-2005 3:22

Juke Box: 001    Image: 01211136

COMPLAINT

GERARD CHANG VS. MICHAEL J. LYNCH et al

001C01211136

**Instructions:**
Please place this sheet on top of the document to be scanned.

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:

**UD-100**

GERARD CHANG
586 SANCHEZ STREET, SAN FRANCISCO, CA 94114

FOR COURT USE ONLY

TELEPHONE NO.: 415.252.8318     FAX NO. *(Optional)*: N/A
E-MAIL ADDRESS *(Optional)*: N/A
ATTORNEY FOR *(Name)*: IN PROPIA PERSONA

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS: 400 MCALLISTER STREET, ROOM 103
MAILING ADDRESS: SAN FRANCISCO, CA 94102
CITY AND ZIP CODE:
BRANCH NAME:

**F I L E D**
San Francisco County Superior Court

MAY 3 1 2005

GORDON PARK-LI, Clerk
BY: _____
Deputy Clerk

PLAINTIFF: GERARD CHANG

DEFENDANT: MICHAEL J. LYNCH AND THAN TRAN

**SUMMONS ISSUED**

☐ DOES 1 TO ____

**COMPLAINT — UNLAWFUL DETAINER***

[X] COMPLAINT   ☐ AMENDED COMPLAINT *(Amendment Number)*:

CASE NUMBER:
**05  614414**

**Jurisdiction** *(check all that apply)*:

[X] ACTION IS A LIMITED CIVIL CASE
   Amount demanded  [X] does not exceed $10,000
                    ☐ exceeds $10,000 but does not exceed $25,000

☐ ACTION IS AN UNLIMITED CIVIL CASE (amount demanded exceeds $25,000)
☐ ACTION IS RECLASSIFIED by this amended complaint or cross-complaint *(check all that apply)*:
   ☐ from unlawful detainer to general unlimited civil (possession not in issue)
   ☐ from unlawful detainer to general limited civil (possession not in issue)
   ☐ from limited to unlimited
   ☐ from unlimited to limited

1. PLAINTIFF *(name each)*:   GERARD CHANG

   alleges causes of action against DEFENDANT *(name each)*:
   MICHAEL J. LYNCH AND THAN TRAN

2. a. Plaintiff is (1) [X] an individual over the age of 18 years.   (4) ☐ a partnership.
                    (2) ☐ a public agency.                            (5) ☐ a corporation.
                    (3) ☐ other *(specify)*:

   b. ☐ Plaintiff has complied with the fictitious business name laws and is doing business under the fictitious name of *(specify)*:

3. Defendant named above is in possession of the premises located at *(street address, apt. no., city, zip code, and county)*:
   584 SANCHEZ STREET, SAN FRANCISCO, CA 94114, COUNTY OF SAN FRANCISCO

4. Plaintiff's interest in the premises is [X] as owner   ☐ other *(specify)*:

5. The true names and capacities of defendants sued as Does are unknown to plaintiff.

6. a. On or about *(date)*: 3/19/2000   defendant *(name each)*: MICHAEL J. LYNCH AND THAN TRAN

      (1) agreed to rent the premises as a ☐ month-to-month tenancy [X] other tenancy *(specify)*: ONE YEAR LEASE.
      (2) agreed to pay rent of $2,000.00   payable [X] monthly   ☐ other *(specify frequency)*:
      (3) agreed to pay rent on the [X] first of the month   ☐ other day *(specify)*:

   b. This [X] written   ☐ oral   agreement was made with
      (1) [X] plaintiff.            (3) ☐ plaintiff's predecessor in interest.
      (2) ☐ plaintiff's agent.      (4) ☐ other *(specify)*:

**\* NOTE:** Do not use this form for evictions after sale (Code Civ. Proc., § 1161a).

Form Approved for Optional Use
Judicial Council of California
UD-100 [Rev. January 1, 2005]

**COMPLAINT—UNLAWFUL DETAINER**

Civil Code, § 1940 et seq.
Code of Civil Procedure §§ 425.12, 1166
www.courtinfo.ca.gov

| PLAINTIFF *(Name)*: GERARD CHANG | CASE NUMBER: |
|---|---|
| DEFENDANT *(Name)*: MICHAEL J. LYNCH AND THAN TRAN | |

6. c. ☐ The defendants not named in item 6a are
    (1) ☐ subtenants.
    (2) ☐ assignees.
    (3) ☐ other *(specify)*:

d. ☒ The agreement was later changed as follows *(specify)*:
    LEASE BECAME MONTH TO MONTH TENANCY *after first year.*

e. ☒ A copy of the written agreement, including any addenda or attachments that form the basis of this complaint, is attached and labeled Exhibit 1. *(Required for residential property, unless item 6f is checked. See Code Civ. Proc., § 1166.)*

f. ☐ *(For residential property)* A copy of the written agreement is **not** attached because *(specify reason)*:
    (1) ☐ the written agreement is not in the possession of the landlord or the landlord's employees or agents.
    (2) ☐ this action is solely for nonpayment of rent (Code Civ. Proc., § 1161(2)).

7. ☒ a. Defendant *(name each)*: MICHAEL J. LYNCH

was served the following notice on the same date and in the same manner:
    (1) ☒ 3-day notice to pay rent or quit     (4) ☐ 3-day notice to perform covenants or quit
    (2) ☐ 30-day notice to quit     (5) ☐ 3-day notice to quit
    (3) ☐ 60-day notice to quit     (6) ☐ Other *(specify)*:

b. (1) On *(date)*: 4-11-2005      the period stated in the notice expired at the end of the day.
    (2) Defendants failed to comply with the requirements of the notice by that date.

c. All facts stated in the notice are true.

d. ☒ The notice included an election of forfeiture.

e. ☒ A copy of the notice is attached and labeled Exhibit 2. *(Required for residential property. See Code Civ. Proc., § 1166.)*

f. ☒ One or more defendants were served (1) with a different notice, (2) on a different date, or (3) in a different manner, as stated in Attachment 8c. *(Check item 8c and attach a statement providing the information required by items 7a–e and 8 for each defendant.)*

8. a. ☒ The notice in item 7a was served on the defendant named in item 7a as follows:
    (1) ☒ by personally handing a copy to defendant on *(date)*: 4/8/05
    (2) ☐ by leaving a copy with *(name or description)*:     , a person of suitable age and discretion, on *(date)*:    at defendant's ☐ residence ☐ business AND mailing a copy to defendant at defendant's place of residence on *(date)*: because defendant cannot be found at defendant's residence or usual place of business.
    (3) ☐ by posting a copy on the premises on *(date)*:      ☐ AND giving a copy to a person found residing at the premises AND mailing a copy to defendant at the premises on *(date)*:
        (a) ☐ because defendant's residence and usual place of business cannot be ascertained OR
        (b) ☐ because no person of suitable age or discretion can be found there.
    (4) ☐ *(Not for 3-day notice; see Civil Code, § 1946 before using)* by sending a copy by certified or registered mail addressed to defendant on *(date)*:
    (5) ☐ *(Not for residential tenancies; see Civil Code, § 1953 before using)* in the manner specified in a written commercial lease between the parties.

b. ☐ *(Name)*:      was served on behalf of all defendants who signed a joint written rental agreement.

c. ☒ Information about service of notice on the defendants alleged in item 7f is stated in Attachment 8c.

d. ☒ Proof of service of the notice in item 7a is attached and labeled Exhibit 3a *and 3b*

9. ☐ Plaintiff demands possession from each defendant because of expiration of a fixed-term lease.

10. ☒ At the time the 3-day notice to pay rent or quit was served, the amount of rent due was $ 4,000.00

11. ☒ The fair rental value of the premises is $ 65.93      per day.

UD-100 [Rev. January 1, 2005]     COMPLAINT—UNLAWFUL DETAINER

PLAINTIFF (Name):   GERARD CHANG

DEFENDANT (Name):   MICHAEL J. LYNCH AND THAN TRAN

CASE NUMBER:

12. [ ] Defendant's continued possession is malicious, and plaintiff is entitled to statutory damages under Code of Civil Procedure section 1174(b). *(State specific facts supporting a claim up to $600 in Attachment 12.)*

13. [X] A written agreement between the parties provides for attorney fees.

14. [X] Defendant's tenancy is subject to the local rent control or eviction control ordinance of *(city or county, title of ordinance, and date of passage):* CITY AND COUNTY OF SAN FRANCISCO RESIDENTIAL RENT STABILIZATION AND ARBITRATION ORDINANCE, SF ADMIN CODE CHAPTER 37, ORD. 276-79 ENACTED 6/12/79, EFFECTIVE 6/13/79

Plaintiff has met all applicable requirements of the ordinances.

15. [ ] Other allegations are stated in Attachment 15.

16. Plaintiff accepts the jurisdictional limit, if any, of the court.

17. **PLAINTIFF REQUESTS**

   a. possession of the premises.
   b. costs incurred in this proceeding:
   c. [X] past-due rent of $4,000.00
   d. [X] reasonable attorney fees.
   e. [X] forfeiture of the agreement.

   f. [X] damages at the rate stated in item 11 from *(date:)* 5/1/05     for each day that defendants remain in possession through entry of judgment.
   g. [ ] statutory damages up to $600 for the conduct alleged in item 12.
   h. [ ] other *(specify):*

18. [✓] Number of pages attached *(specify):* 12

## UNLAWFUL DETAINER ASSISTANT (Bus. & Prof. Code, §§ 6400–6415)

19. *(Complete in all cases.)* An unlawful detainer assistant [X] did **not** [ ] did   for compensation give advice or assistance with this form. *(If plaintiff has received any help or advice for pay from an unlawful detainer assistant, state:)*

   a. Assistant's name:
   b. Street address, city, and zip code:

   c. Telephone No.:
   d. County of registration:
   e. Registration No.:
   c. Expires on *(date):*

Date: 5/31/05

_____
Gerard Chang
(TYPE OR PRINT NAME)

► ⊾ _____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

## VERIFICATION

*(Use a different verification form if the verification is by an attorney or for a corporation or partnership.)*

I am the plaintiff in this proceeding and have read this complaint. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 5/31/05

_____
GERARD CHANG
(TYPE OR PRINT NAME)

► ⊾ _____
(SIGNATURE OF PLAINTIFF)

UD-100 [Rev. January 1, 2005]

**COMPLAINT—UNLAWFUL DETAINER**

Page 3 of 4

Exhibit "2"



San Francisco Superior Courts
Information Technology Group

**Document Scanning Lead Sheet**

Jul-21-2005  4:00 pm

Case Number: CGC-05-443288

Filing Date: Jul-21-2005 3:58

Juke Box: 001    Image: 01246338

COMPLAINT

WILLIAM CHANG VS. GERARD CHANG et al

001C01246338

**Instructions:**
Please place this sheet on top of the document to be scanned.

**F I L E D**
San Francisco County Superior Court

**JUL 2 1 2005**

GORDON PARK-LI, Clerk
BY: _____
Deputy Clerk

1   ANDREW M. ZACKS SBN 147794
    ERIC D. McFARLAND SBN 214245
2   ZACKS UTRECHT & LEADBETTER, P.C.
    235 Montgomery Street, Ste. 1130
3   San Francisco, CA 94104          CASE MANAGEMENT CONFERENCE SET
    Telephone: (415) 956-8100
4   Facsimile: (415) 288-9755        PLAN I  DEC 2 3 2005  9:00 AM

5   Attorneys for Plaintiff          DEPARTMENT 212
    William Chang
6                                    **SUMMONS ISSUED**

7              SUPERIOR COURT OF CALIFORNIA

8            CITY AND COUNTY OF SAN FRANCISCO

9              UNLIMITED CIVIL JURISDICTION

10  WILLIAM CHANG,                )  Case No. **CGC 05 443288**
                                  )
11       Plaintiff,               )  **COMPLAINT FOR BREACH OF**
                                  )  **CONTRACT, DAMAGES,**
12       vs.                      )  **ACCOUNTING, INJUNCTIVE**
                                  )  **RELIEF & DECLARATORY**
13  GERARD CHANG and              )  **RELIEF**
14  DOES 1-10,                    )
                                  )
15       Defendants.              )

16           **GENERAL ALLEGATIONS**

17  Plaintiff William Chang ("plaintiff") alleges:

18       1.      Plaintiff is the record owner of an undivided 30% interest in the real

19  property located at 584-588 Sanchez Street, San Francisco, CA 94114 (the

20  "premises").

21       2.      Defendant William Chang ("defendant") is the record owner of an

22  undivided 70% interest in the premises.

23       3.      Plaintiff is not aware of the true identities of defendants DOES 1-10,

24  so plaintiff sues said defendants pursuant to Code of Civil Procedure § 474

25  accordingly; plaintiff will amend this complaint with leave of court when plaintiff

26

27  _____
    Chang v. Chang
28  Compl.: Breach K, Damages, Acc., Inj. Rel., Dec. Rel.          Page 1 of 8

ORIGINAL

1   discovers said defendants' true identities.

2      4.     Plaintiff and defendant own the premises jointly as tenants-in-

3   common under the terms of a written tenancy-in-common ownership agreement.

4   A true and correct copy of said agreement is attached hereto as Exhibit A and

5   referenced hereafter as the "TIC Agreement."

6      5.     The premises is composed of three units: 584 Sanchez (the "lower

7   unit"); 586 Sanchez (the "upper unit"); and 588 Sanchez (the "cottage").

8      6.     Under the terms of the TIC Agreement, plaintiff has the exclusive

9   right to live in or rent the lower unit, and is entitled to all rent proceeds from the

10  rental of the lower unit.  Defendant has no rights to rent or use the lower unit for

11  any purpose whatsoever.

12     7.     Under the terms of the TIC Agreement, defendant has the exclusive

13  right to live in or rent the upper unit, and lives in the upper unit accordingly; in

14  addition, defendant has exclusive control over the cottage and is entitled to all

15  rent proceeds from the rental of the cottage.

16     8.     Under the terms and covenants of the TIC Agreement, defendant

17  owes plaintiff the following fiduciary duties:

18     a.     not to interfere with plaintiff's right to rent or use the lower unit;

19     b.     not to engage in any conduct vis-a-vis any tenants at the premises

20  that would expose plaintiff to any liability, including but not limited to any

21  liability for violating any tenant's right to quite enjoyment at the premises,

22  wrongfully endeavoring to recover possession of any unit from any tenant at the

23  premises, or wrongfully evicting any tenants from the premises; and

24     c.     to account for all monies spent in connection with the ownership and

25  maintenance of the premises, including but not limited to any monies spent in

26

27

28  Chang v. Chang
    Compl.: Breach K, Damages, Acc., Inj. Rel., Dec. Rel.          Page 2 of 8

1  connection with any mortgage, tax, or insurance payments or any repairs or

2  improvements made at the premises.

3      9.    Notwithstanding the terms and covenants of the TIC Agreement,

4  defendant has breached his obligations under the TIC Agreement by:

5      a.    demanding rent from tenants living in the lower unit;

6      b.    demanding possession from tenants living in the lower unit;

7      c.    disrupting tenants in the lower unit and the cottage by, amongst

8  other things, creating loud noises such as banging, shining bright lights into

9  windows at night, entering tenants' units without notice or justification, cutting

10  tenants' cable and internet services, accessing tenants' mail without permission or

11  justification, destroying property in the common area of the premises such as

12  shrubs and bushes to intimidate, antagonize, and annoy tenants at the premises;

13  and

14      d.    failing to account for monies spent in connection with the ownership

15  and maintenance of the premises.

**First**
**Cause-of-Action**
16
17  **Breach of Contract**

18      10.   Plaintiff re-alleges paragraphs 1-9 as though fully alleged herein.

19      11.   The lower unit was rented to tenants for $2,000 per month.

20      12.   In or about April 2005, defendant served a three day notice to pay

21  rent or quit on the tenants in the lower unit demanding that the tenants pay

22  defendant rent for the lower unit or quit and deliver possession of the lower unit

23  to defendant.

24      13.   The tenants vacated the lower unit in July 2005, due to the three day

25  notice, and due to the disturbances alleged in paragraphs 9.c. above, and are no

26

27

28  <u>Chang v. Chang</u>
Compl.: Breach K, Damages, Acc., Inj. Rel., Dec. Rel.              Page 3 of 8

1    longer paying $2,000 per month for the lower unit as a consequence.

2          14.    Defendant breached the TIC Agreement by demanding rent for the

3    lower unit and/or possession of the lower unit, and by disturbing the tenants as

4    alleged in paragraph 9.c. above.

5          15.    As a direct and proximate result of said breach, plaintiff has been and

6    continues to be damaged in the sum of at least $2,000 per month, and further

7    according to proof at trial.

**Second
Cause-of-Action
Tortious Interference With
Prospective Economic Advantage**

8

9

10

11          16.    Plaintiff re-alleges paragraphs 1-15 as though fully alleged herein.

12          17.    Plaintiff was and is entitled to rent from tenants for the rental of the

13    lower unit in the sum of $2,000 per month; however, plaintiff can no longer rent

14    the lower unit because of defendant's intentional breaches of the TIC Agreement

15    and intentional efforts to intimidate, harass, and annoy tenants at the premises as

16    alleged herein above.

17          18.    As a direct and proximate result of said actions, plaintiff has been

18    and continues to be damaged by at least $2,000 per month, and further according

19    to proof at trial.

**Third
Cause-of-Action
Intentional Infliction of Emotional Distress**

20

21

22          19.    Plaintiff re-alleges paragraphs 1-18 as though fully alleged herein.

23          20.    Defendant intentionally, and with no regard for plaintiff's rights

24    under the TIC Agreement or plaintiff's interest in or potential liability in

25    connection with the premises, engaged in outrageous, offensive, abusive, and

26    intimidating behavior designed to drive tenants from the premises and deprive

27

28    <u>Chang v. Chang</u>
Compl.: Breach K, Damages, Acc., Inj. Rel., Dec. Rel.          Page 4 of 8

C                          C

1 | plaintiff of his rights under the TIC Agreement and interest in the premises.

2 |     21.   As a direct and proximate result of said behavior, plaintiff has been

3 | damaged according to proof at trial.

4 |     22.   Because defendant's behavior was intentional and outrageous,

5 | plaintiff is entitled to punitive damages from defendant according to proof at trial.

6 | <center>**Fourth**</center>

<center>**Cause-of-Action**</center>

7 | <center>**Negligent Infliction of Emotional Distress**</center>

8 |     23.   Plaintiff re-alleges 1-22 as though fully alleged herein.

9 |     24.   Defendant negligently, and with no regard for plaintiff's rights under

10 | the TIC Agreement or interest in or potential liability in connection with the

11 | premises, engaged in outrageous, offensive, abusive, and intimidating behavior

12 | designed to drive tenants from the premises and deprive plaintiff of his rights

13 | under the TIC Agreement and interest in the premises.

14 |     25.   As a direct and proximate result of said behavior, plaintiff has been

15 | damaged according to proof at trial.

16 | <center>**Fifth**</center>

<center>**Cause-of-Action**</center>

17 | <center>**Accounting**</center>

18 |     26.   Plaintiff re-alleges paragraph 1-25 as though fully alleged herein.

19 |     27.   Plaintiff and defendant owe each other fiduciary duties under the TIC

20 | Agreement concerning all monies spent in connection with the maintenance and

21 | ownership of the premises.

22 |     28.   A balance is due to plaintiff from defendant for all monies that

23 | defendant spent without authorization under the terms of the TIC Agreement;

24 | said balance can only be ascertained by an accounting.

25

26

27

28 | Chang v. Chang
<br>Compl.: Breach K, Damages, Acc., Inj. Rel., Dec. Rel.          Page 5 of 8

**Sixth**
**Cause-of-Action**
**Injunction**

29.    Plaintiff re-alleges paragraphs 1-28 as though fully alleged herein.

30.    Defendant has breached and continues to breach the TIC Agreement, and has engaged and continues to engage in behavior designed and calculated to deprive plaintiff or his rights under the TIC Agreement and his interest in the premises.

31.    Defendant should be enjoined from engaging in the behavior alleged herein and causing further damage to plaintiff.

**Seventh**
**Cause-of-Action**
**Declaratory Relief**

32.    Plaintiff re-alleges paragraphs 1-31 as though fully alleged herein.

33.    An actual controversy has arisen and now exists between plaintiff and defendant: plaintiff is entitled to be indemnified by defendant for any and all claims and/or judgments that may follow should defendant's actions be found to be actionable for breach of the covenant of quiet enjoyment, wrongful endeavor, and/or wrongful eviction vis-a-vis tenants at the premises; yet, defendant denies his obligation to indemnify plaintiff for said acts.

34.    A judicial declaration is therefore necessary and appropriate at this time under the circumstances in order for plaintiff to ascertain his rights to be indemnified for defendant's actions should they be found to be actionable at law.

WHEREFORE, plaintiff prays for judgment against defendants, and each of them, as follows:

First through Fourth Cause-of-Action:

A.    For compensatory damages in the sum of at least $2,000 per month

Chang v. Chang
Compl.: Breach K, Damages, Acc., Inj. Rel., Dec. Rel.          Page 6 of 8

1   from July 2005, and further according to proof at trial;

2   Third Cause of Action:

3       B.    Punitive damages according to proof at trial;

4   Fifth Cause-of-Action:

5       C.    For an accounting and judgment for the balance of all sums spent in

6   violation of the TIC Agreement;

7   Sixth Cause-of-Action:

8       D.    For a preliminary and permanent injunction enjoining defendant

9   from:

10       I.    demanding rent from tenants living in the lower unit;

11       ii.    demanding possession of the lower unit from tenants living in the

12   lower unit;

13       iii.    disrupting tenants' right to quiet enjoyment at the premises by,

14   amongst other things, creating loud noises such as banging, shining bright lights

15   into windows at night, entering tenants' units without notice or permission,

16   cutting tenants' cable and internet services, accessing tenants' mail without

17   permission or justification, destroying property in the common area of the

18   premises, or any other acts or omissions that would disturb, antagonize, offend,

19   annoy or intimidate tenants at the premises; and

20       iv.    failing to account for monies spent in connection with the ownership

21   and maintenance of the premises.

22   Seventh Cause-of-Action

23       E.    For a declaration of setting forth plaintiff's right to be indemnified

24   for any claims and/or judgments that may result should defendant's actions vis-a-

25   vis tenants at the premises be actionable at law, including but not limited to any

26

27

28   Chang v. Chang
    Compl.: Breach K, Damages, Acc., Inj. Rel., Dec. Rel.        Page 7 of 8

1 action for breach of the covenant of quiet enjoyment, wrongful endeavor, and/or

2 wrongful eviction.

3 <u>All Causes-of-Action</u>

4      F.    For costs of suit; and

5      G.    For such other and further relief as the Court deems just and proper.

6 Dated: July 20, 2005.

7                  ZACKS UTRECHT & LEADBETTER, P.C.

8

9                  By: Eric D. McFarland

10                  **Attorneys for Plaintiff William Chang**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TENANCY-IN-COMMON OWNERSHIP AGREEMENT
## 584-586-588 Sanchez Street, San Francisco, CA

The parties to this Agreement are WILLIAM CHANG and GERARD CHANG, both single men who purchased the residential real property commonly described as 584-588 Sanchez Street, San Francisco, CA in 1999. The purpose of this Agreement is to set forth in writing the parties' agreements regarding the ownership, maintenance, and sale of 584-586-588 Sanchez Street, San Francisco, CA, which consists of three (3) individual dwelling units.

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth in this Agreement, the parties agree as follows:

1.  <u>Ownership, Residence, Possession and Control</u>.  The parties shall maintain title to 584-588 Sanchez Street, San Francisco, CA as tenants in common, with WILLIAM CHANG owning an undivided thirty percent (30%) interest in the property, and GERARD CHANG owning an undivided seventy percent (70%) interest in the property. For the purposes of this Agreement, and subject to any subsequent adjustment of ownership interests permitted hereunder, each party's "pro rata" share shall be the percentage associated with that party's name in this paragraph. Each party shall have the exclusive right to occupy as his principal or secondary residence, or rent out for his own benefit subject to San Francisco Rent Control Ordinance restrictions, that portion of 584-588 Sanchez Street, San Francisco, CA described next to their names below:

WILLIAM CHANG          584 Sanchez (lower unit)
GERARD CHANG          586 Sanchez (upper unit) and garage

The cottage rental, 588 Sanchez, shall be under the sole management and control of GERARD CHANG, and any income derived from it shall belong solely to GERARD CHANG.

The property, and any interest therein, may be sold, assigned, encumbered, or otherwise conveyed only by unanimous written agreement signed by all parties, except as specified elsewhere in this Agreement.  Amendment of this Agreement, including without limitation, any reallocation of the exclusive rights defined herein, shall be only by unanimous written agreement signed by all parties.  All other decisions, except as specified elsewhere in this Agreement, shall be made with the vote of at least 50% of the ownership interest.  Any vote by the parties (other than by unanimous written consent) shall be taken with advance written notice to all parties, by personal delivery or certified mail, served or mailed at least fourteen (14) calendar days prior to the vote.

2.  <u>Initial Capital Accounts</u>.  The parties acknowledge that each has contributed his pro rata share to the purchase and closing costs of 584-588 Sanchez Street, San Francisco, CA.

24047b.doc:3053-00 © June 24, 2003 Goldstein, Gellman, Melbostad, Gibson & Harris, LLP.  Any reproduction or use of this document, its content, or its format in connection with any project other than the one described is prohibited.

3.   Adjustments to Equity.  No party may make any voluntary contribution of capital or other adjustments to his equity in 584-588 Sanchez Street, San Francisco, CA without the consent of the other party.  Except as otherwise specifically stated herein, no party may withdraw capital or borrow against his equity in 584-588 Sanchez Street, San Francisco, CA, or transfer any interest therein to any other party or any outside party without the consent of the other party, which consent shall not be unreasonably withheld.  No party shall be entitled to receive any interest on his capital contribution.

4.   Regular Expenses.  Each party is responsible for and shall pay as they become due that party's pro rata share of all mortgage payments (whether or not a party is listed as a borrower on the mortgage), property taxes, and insurance premiums, repairs to common areas, costs of capital improvements made with the approval of the parties as provided in this Agreement, management fees, professional fees, routine maintenance costs and other usual expenses associated with 584-588 Sanchez Street, San Francisco, CA (hereafter, "regular expenses").  The cost of water shall be allocated equally between the three units.  Other utilities are separately metered to each unit.  Any increase in real property taxes resulting from a transfer by a party of his interest in 584-588 Sanchez Street, San Francisco, CA in accordance with this Agreement shall be the sole responsibility of the party to whom such interest is transferred in the year of the transfer and in all subsequent years, and such party shall pay such amount prior to the due date thereof.  Further, in the event the total assessed value of 584-588 Sanchez Street, San Francisco, CA is increased as a direct consequence of a party's improvements to the property pursuant to the paragraph titled 'Capital Improvements', below, that party shall pay the full increase in property taxes attributed to the value increase.  The parties agree that the definition of "common areas" then in effect under California condominium law shall determine, for the purposes of this Agreement, those areas of the property for which the parties are jointly responsible.  Each party reserves a non-exclusive easement for ingress, egress and support and for utilities, at reasonable places throughout the common areas.                 90   PYS
                                         w me

5.   The parties further agree that the existing first mortgage in the approximate sum of $600,000, and the current equity line in the approximate sum of $150,000 shall be combined and refinanced in a new single first mortgage on the subject real property within sixty (60) days of the signing of this agreement.  GERARD CHANG agrees that he is solely liable for the current equity line of $150,000, and any interest accruing thereon.  The parties agree that they are liable pro rata for the remaining $600,000 portion of the mortgage and any interest accruing thereon.  GERARD CHANG agrees that he shall solely and individually be responsible for paying down the $150,000 (former equity line portion) of the new first mortgage and related interest on said $150,000 sum at the time his interest in the property is sold, less any contributions against said sum made by GERARD CHANG prior to the sale of his interest.  Said interest on the $150,000 sum shall begin to accrue on the date the first mortgage payment of the newly consolidated first mortgage is paid.

6.   Mortgage Prepayment.  A party may prepay all or a portion of his share of mortgage debt provided (i) the parties' mortgage permits prepayment without penalty, (ii)

24047b.doc:3053-00 © June 24, 2003 Goldstein, Gellman, Melbostad, Gibson & Harris, LLP.  Any reproduction or use of this document, its content, or its format in connection with any project other than the one described is prohibited.

the party successfully arranges a reamortization so that the total monthly payment is reduced to reflect the prepayment, and, (iii) the party pays any associated reamortization fee. In such event, the party making the prepayment shall receive the full benefit of the monthly payment reduction. The parties shall thereafter adjust their shares of mortgage debt set forth in paragraph 3, above, to reflect the changes in each party's share of mortgage debt.

7.   Bank account.  The parties shall jointly establish a bank account which shall require two signatures for issuing checks, and shall further secure automatic debit of their monthly mortgage payments from the joint account.

8.   Rental of Individual Units. Either party may rent his individual dwelling unit, provided, however, that the then occupying parties shall first approve any prospective tenant, subtenant or roommate, which approval shall not be unreasonably withheld. However, approval of the tenant(s) in the cottage by WILLIAM CHANG shall not be required. Any rent received by a party shall be paid directly to that party, and that party shall be entitled to those funds unless that party is in default of that party's obligations (described below), in which case said rental sums may be required by a court to be applied to that parties obligations under paragraph 3 herein. In the event WILLIAM CHANG elects to evict the current tenant of 584 Sanchez under an owner move-in eviction to obtain occupancy, GERARD CHANG shall approve of the eviction however, WILLIAM CHANG hereby expressly indemnifies GERARD CHANG and agrees to hold him harmless from any and all claims stemming from said action including any and all damages, judgments, costs and attorneys fees. Further, WILLIAM CHANG agrees to be solely responsible for any and all expenses, costs, legal fees necessary to carry out the owner move-in eviction. Any subsequent evictions for cause shall be at the sole expense of the party who has control of the unit described in paragraph 1. In the event GERARD CHANG elect to evict a tenant at 586 Sanchez, WILLIAM CHANG shall approve of the eviction. WILLIAM CHANG shall not oppose any eviction proceedings of tenants in 588 Sanchez.

9.   Extraordinary Services by a Party.  Any party performing extraordinary services (such as bookkeeping or tax preparation) benefiting the property may charge as a regular expense of the property, a reasonable fee for services rendered, which fee shall not exceed the cost of obtaining similar services from a non-party.

10.   Capital Improvements.  Substantial capital improvements or replacements to common areas of 584-588 Sanchez Street, San Francisco, CA (those portions of the property not within the confines of the units allocated to WILLIAM or GERARD in paragraph 1), shall be made only with both parties' written consent, provided that no party may veto the replacement when reasonably required of any foundation, load bearing wall, roof or common building system. Each party shall pay his pro rata share of said costs when due. Improvements to the interior of any individual unit of the property which would not otherwise constitute reasonably necessary repair or replacement of existing structures, systems or fixtures shall be at the sole election, expense and property tax liability of the party authorizing same for his assigned unit, and shall in no way affect

24047b.doc:3053-00 © June 24, 2003 Goldstein, Gellman, Melbostad, Gibson & Harris, LLP.  Any reproduction or use of this document, its content, or its format in connection with any project other than the one described is prohibited.

the capital accounts of the parties; provided, however, that if the parties unanimously concur that the improvement will significantly benefit the entire property, and increase the total value thereof, then by written addendum to this Agreement, signed by all parties, specifying the nature of the improvement and the cost thereof, the cost of said improvement, less straight-line depreciation per IRS regulations, shall be recoverable by the party paying same at the time said party's interest in the property shall be sold pursuant to the terms of this Agreement. All work on or about 584-588 Sanchez Street, San Francisco, CA shall be completed to applicable building and safety codes and with all necessary permits.

   11. <u>Tax Allocation</u>. The parties hereby allocate pro rata among themselves all tax benefits arising from the purchase, ownership or use of the property or the timely payment of regular expenses; provided, however, that tax benefits arising from individual improvements undertaken pursuant to the preceding paragraph shall be allocable only to the party bearing the cost of said improvements.

   12. <u>Insurance</u>. The parties agree to maintain insurance on the property sufficient to protect their investment against loss from fires, floods or other insurable causes. The parties shall maintain an insurance policy insuring themselves against public liability incident to ownership and use of 584-588 Sanchez Street, San Francisco, CA. The combined limits of coverage shall not be less than one million dollars ($1,000,000) for injury, death and property damage. The policy shall contain a severability of interest endorsement precluding the insurer from denying coverage to a named insured because his act or omission created liability in favor of another insured. The policy will contain landlord/rental coverage. Each such insurance policy shall (i) provide a waiver of subrogation rights against the parties, (ii) state that coverage be primary and not affected by any other insurance held by a party, and (iii) require that at least thirty (30) days prior written notice be given to all parties by the insurer before cancellation. Such insurance shall be written by an insurance company qualified to do business in California with a rating of at least an "A" by Best's Insurance Reports or equivalent.

   13. <u>Default</u>. In the event a party fails or refuses to pay that party's pro rata share of the regular expenses including debt service for more than seven (7) days after they are due, or files a voluntary petition in bankruptcy, is adjudicated a bankrupt, becomes insolvent, makes an assignment for the benefit of creditors, or applies for or consents to the appointment of a receiver or trustee with respect to any substantial part of that party's assets, the other party may make such payments on behalf of the defaulting party, the amount of which payments shall constitute a secured lien upon the defaulting party's interest in 584-588 Sanchez Street, San Francisco, CA, subject to enforcement as provided under applicable law including, without limitation, sale pursuant to California Civil Code §§2924, *et seq.* or by judicial foreclosure. The defaulting party's right to occupy any portion of 584-588 Sanchez Street, San Francisco, CA under this Agreement shall terminate immediately upon default, and the defaulting party shall be subject to Eviction from the premises following service of any legally required notices. By executing this Agreement, each party expressly agrees to waive any legal right to occupy the premises while in default. A party may proceed with legally required notices related

24047b.doc:3053-00 © June 24, 2003 Goldstein, Gellman, Melbostad, Gibson & Harris, LLP. Any reproduction or use of this document, its content, or its format in connection with any project other than the one described is prohibited.

to Eviction immediately upon default by another party. In addition to any other remedy so provided, the non-defaulting parties shall recover all such sums from the defaulting party at the time said party's interest in the property shall be sold pursuant to the terms of this Agreement. Interest on any sums advanced by the non-defaulting parties shall accrue at the simple rate of Bank of America Prime Rate plus 2 % per annum, until paid in full. Each party waives the benefit of statutory debtor protection, including homestead and exemption rights, to the full extent permitted by California and Federal law with respect to enforcement of obligations described in this Agreement. For the purpose of securing performance of each of the obligations described in this Agreement, each party hereby pledges that party's interest to the other as security for such obligations and acknowledges that such interest is subject to foreclosure rights, and hereby grants, transfers and conveys that party's ownership interest in 584-588 Sanchez Street, San Francisco, CA to Fidelity National Title Insurance Company, a corporation, as trustee, and to each other, as beneficiaries, under the terms and conditions of that certain fictitious deed of trust recorded October 23, 1961, in Book A332 at page 905 of the Official Records of San Francisco County, California, which are hereby incorporated by reference. In the event of default as hereinabove described, each non-defaulting party is granted the power to sell the defaulting party's interest in the property at a public sale conducted pursuant to the applicable provisions of California law for exercise of a non-judicial power of sale in a deed of trust. Any non-defaulting party may bid at such a sale. Alternatively, any non-defaulting party may seek judicial foreclosure or execution once the defaulting party's obligation has been reduced to a judgment.

14.   Sale of Entire Property.   If the parties unanimously agree that 584-588 Sanchez Street, San Francisco, CA should be sold, and subject to any right of first refusal vested in a party, described below, the property shall immediately be listed for sale with a licensed real estate broker, with the listing price to be set by agreement of the parties, or if no agreement can be reached, by the listing broker. The property shall be made available for inspection according to local practice. The balance of the sale price after repayment of all mortgages, taxes and commissions and capital improvement costs allowed under paragraph 7, above, shall be shared pro rata by the parties. Proration of property taxes shall be allocated pro rata. Provided, however, that if any party is in arrears on any regular expenses, including debt service, such regular expenses shall be repaid before any sums are allocated to the party in arrears.

15.   Lender Approval Requirement.   The parties understand and acknowledge that if an ownership interest in 584-588 Sanchez Street, San Francisco, CA is transferred to an individual who is *not* a signatory to the parties' mortgage (deed of trust), and such transfer is not approved by the lender, such lender could declare the entire outstanding balance of the mortgage immediately due and payable (an "acceleration") and, in the event of non-payment, initiate foreclosure of the property. Accordingly, notwithstanding anything to the contrary in this Agreement, no party shall transfer any interest in 584-588 Sanchez Street, San Francisco, CA to an individual who is not already a signatory to the parties' mortgage unless: (i) the mortgage lender approves the transfer in writing, or (ii) all parties agree, in writing, to allow the transfer without lender approval and assume the resulting risk of acceleration and foreclosure. In the event all parties do not agree to

24047b.doc:3053-00 © June 24, 2003 Goldstein, Gellman, Melbostad, Gibson & Harris, LLP. Any reproduction or use of this document, its content, or its format in connection with any project other than the one described is prohibited.

allow the transfer without lender approval, each party shall cooperate in good faith in securing such approval. Such cooperation shall include, without limitation, submitting all documentation required by the mortgage lender, and portraying the party's creditworthiness in the best possible light. All charges imposed by the mortgage lender shall be paid by the prospective transferor.

16.   **Transfer of Individual Interests.** A party may transfer his entire interest in 584-588 Sanchez Street, San Francisco, CA only as set forth herein. Any other purported transfer of all or part of a party's interest shall be void and of no effect against the property, any other party, any creditor of the parties or any claimant against the parties. Subject to the foregoing, a party may transfer his interest:

    i.    By mutual agreement of the parties;

    ii.    To a revocable inter vivos trust of which the party is a beneficiary;

    iii.    By succession or testamentary disposition on death; or,

    iv.    To any person after the party making the transfer has first offered the other party his right of first refusal in accordance with the provisions of this Agreement, provided that the non-selling parties shall have the right to approve the transferee, which approval shall not be unreasonably withheld. Any approved transferee shall agree in writing to be bound by all terms and conditions of this Agreement.

17.   **Right of First Refusal.** If any party wishes to sell his interest in 584-588 Sanchez Street, San Francisco, CA, the other party shall have the right of first refusal to purchase the selling party's interest by meeting any bona fide offer of sale on the same terms and conditions of such offer, and on failure to notify the selling party of his intentions to exercise this right of first refusal within twenty (20) days, or failure to complete said purchase within sixty (60) days after written notice thereof from the selling party, the selling party shall be free to sell his interest in the property to such third person in accordance with the terms and conditions of the offer, provided that the other party shall have the right to approve or reject the purchaser, which approval shall not be unreasonably withheld, further provided that any purchaser shall agree in writing to be bound by all terms and conditions of this Agreement.

18.   **Death of a Party.** In the case of a party's death this Agreement shall not terminate and the surviving party shall continue to own and control 584-588 Sanchez Street, San Francisco, CA under the terms of this Agreement with any successors or transferees of the deceased party, provided, however, that any such successors or transferees shall not participate in the management of the property, nor in decisions by the surviving party regarding same, nor shall they have any rights to use or occupy the property, nor shall they receive the benefit of any rents in excess of their pro rata share of ordinary expenses; further provided that any such successors or transferees shall not be obligated beyond their pro rata share for any regular or other expenses associated with the property. Alternatively, the surviving party may purchase a deceased party's interest at the Specified Purchase Price hereinbelow defined by giving written notice to the heirs or

24047b.doc:3053-00 © June 24, 2003 Goldstein, Gellman, Melbostad, Gibson & Harris, LLP. Any reproduction or use of this document, its content, or its format in connection with any project other than the one described is prohibited.

personal representatives of the deceased party within thirty (30) days after receiving notice of a party's death. Said purchase shall be completed within sixty (60) days of the election to purchase, or the earliest date permitted under any applicable probate administration.

19. <u>Specified Purchase Price</u>.  The specified purchase price of a party's interest referred to in this agreement is determined as follows.  The Specified Purchase Price shall be the then current fair market value of 584-588 Sanchez Street, San Francisco, CA; less five percent (5%); multiplied by the deceased or selling party's pro rata percentage interest as set forth in paragraph 1, above; less prorated property taxes; less the party's percentage of outstanding mortgage debt set forth in paragraph 3, above; and then adjusted (upwards or downwards) by any amounts then owing pursuant to this Agreement.  If the fair market value of the property cannot be determined by mutual agreement, then within fifteen (15) days following written demand by any party, or by the heirs or representatives of any deceased party, the disputing parties either:  (a) shall jointly appoint a Qualified Appraiser for the purpose of determining the fair market value of 584-588 Sanchez Street, San Francisco, CA; or, (b) failing this joint action, shall each separately designate a Qualified Appraiser and, within five (5) days after their appointment, the two designated Qualified Appraisers shall jointly designate a third Qualified Appraiser, whose appraisal of the fair market value of said property shall be binding and conclusive.  A "Qualified Appraiser" shall be a person:  (i) having at least two (2) years experience appraising real estate similar to 584-588 Sanchez Street, San Francisco, CA in the area where said property is located, (ii) holding a valid real estate sales, brokerage or appraisal license, (iii) having no prior business or personal relationship with any party to this Agreement, and (iv) agreeing in writing to complete an appraisal within fourteen (14) calendar days of retention.  The failure of any party to appoint an appraiser within the time allowed shall be deemed equivalent to appointing the appraiser appointed by the other party, and that appraisal shall be the fair market value. The fees of the appraiser(s) shall be treated as an item of the regular expenses under paragraph 3, above.

20. <u>Expenses During Sale</u>.  The parties shall be jointly responsible, pro rata, for all regular expenses for the property during any period in which the property is up for sale.

21. <u>Damage and Destruction; Condemnation</u>.  If 584-588 Sanchez Street, San Francisco, CA is destroyed, in whole or in part, or if a portion of the property is condemned, the parties shall agree whether to repair or restore the property so damaged or destroyed, or the portion of the property not condemned; if the party's cannot agree, then the 70% owner shall have the final determination.  In the event the parties determine that 584-588 Sanchez Street, San Francisco, CA shall *not* be repaired or restored, the property shall be sold.  The proceeds of such sale (together with any insurance proceeds and condemnation award), or, in the case of a total condemnation of 584-588 Sanchez Street, San Francisco, CA, the condemnation award shall be shared by the parties in proportion to the fair market value of their respective interests in 584-588 Sanchez Street, San Francisco, CA, as determined by unanimous agreement of the parties, or failing

24047b.doc:3053-00 © June 24, 2003 Goldstein, Gellman, Melbostad, Gibson & Harris, LLP.  Any reproduction or use of this document, its content, or its format in connection with any project other than the one described is prohibited.

same, by appraisal the fair market value of their respective interests pursuant to the relevant provisions for selecting an appraiser set forth in paragraph 16, above, subject to adjustment for any amounts then owing pursuant to this Agreement, including mortgage debt. Any insurance proceeds or condemnation award for a partial condemnation of the property that are unused after repair and restoration of the property shall be divided, pro rata, among the parties.

22. <u>Animals</u>. No animals except dogs under 40 pounds, domestic cats, fish, and birds inside bird cages may be kept on or about 584-588 Sanchez Street, San Francisco, CA. No more than two (2) four-legged pets may be kept by a party. Permitted animals shall not be kept, bred, or raised for commercial purposes. Any party can prohibit the keeping of any animal that constitutes a nuisance. All parties who keep pets on the property (i) shall keep such pet under reasonable control at all times, (ii) shall immediately clean up after such pet, (iii) shall be liable to the other parties and all persons for any damage to persons or property proximately caused by such pet, and (iv) shall indemnify and hold harmless the other parties against any and all loss, cost or liability, including attorneys' fees, arising out of claims related to such pet. The provisions of this Section may only be altered with unanimous approval of the parties.

23. <u>Waiver of Partition</u>. The parties each waive their respective rights to seek or obtain judicial partition of 584-588 Sanchez Street, San Francisco, CA for a period of five (5) years from the date of this Agreement. Thereafter, no waiver of any right to obtain judicial partition shall be implied by virtue of any provision of this Agreement, including any right of first offer or refusal. This waiver of partition shall apply to any person or entity acquiring any right, lien or interest in said property. No party shall attempt to enforce his or her partition rights hereunder without first making bona fide efforts to sell her or his interest in the property for at least six months, unless sale of an individual interest in the property has become impossible or unreasonably difficult by operation of local law.

24. <u>Parking</u>. The single car garage shall be used solely by GERARD CHANG. Major repair of a motor vehicle is not permitted anywhere on the property. Other storage shall be allocated pro rata between the parties.

25. <u>Subordination</u>. This Agreement alone shall govern all rights with respect to the use, possession, enjoyment, management and disposition of 584-588 Sanchez Street, San Francisco, CA. The parties hereby relinquish all common law or statutory rights with respect to the use, possession, enjoyment, management and disposition of 584-588 Sanchez Street, San Francisco, CA which might otherwise be available as a tenant-in-common.

26. <u>No Partnership</u>. This Agreement is not intended to create a partnership, joint venture or subdivision, but to set forth the terms and conditions upon which each party and subsequent transferees shall hold undivided interests in 584-588 Sanchez Street, San Francisco, CA, nor shall the use by the parties of a fictitious business name, if any, to refer to their activities infer any such intention. No party hereto or subsequent

24047b.doc:3053-00 © June 24, 2003 Goldstein, Gellman, Melbostad, Gibson & Harris, LLP. Any reproduction or use of this document, its content, or its format in connection with any project other than the one described is prohibited.

transferee is authorized to act as agent or on behalf of the other party, to do any act which will be binding on any other party, or to incur any expenditures with respect to the property except as specifically provided in this Agreement.

27.    Attorney's Fees and Costs.  In the event that arbitration or other litigation is commenced by either party to interpret or enforce this Agreement, or which in any way arises out of this Agreement, the prevailing party shall recover from the other party his reasonable attorney's fees and all other costs of litigation or arbitration.

28.    Nonassignability; Binding on Heirs.    Because this Agreement contemplates the sharing of a residence as well as the ownership of property, a party's rights and obligations hereunder may not be assigned without the express, written consent of the other party to this Agreement.  This Agreement shall be binding on the heirs and estates of the parties.

29.    Integration; Written Modification.  This Agreement sets forth the entire agreement of the parties regarding 584-588 Sanchez Street, San Francisco, CA and supersedes any preexisting oral or written agreements by and between the parties hereto. Any modification, addition, or amendment to this Agreement must be in writing and signed by the parties hereto.

30.    Severability.  In the event any portion of this Agreement is held to be unenforceable for any reason, the balance of this Agreement shall remain in full force and effect and shall not be affected by the unenforceability of any portion of this Agreement.

31.    Applicable Law.  This Agreement shall be construed and interpreted according to the laws of the State of California.

32.    Negotiation and Drafting.  The parties acknowledge that the firm of Goldstein, Gellman, Melbostad, Gibson & Harris, LLP, has represented only GERARD CHANG in the drafting of this Agreement, and in all matters relating thereto, and that said firm has advised the other party to this agreement to obtain independent counsel for the review of same prior to signing. Notwithstanding, the determination of the terms of, and the drafting of, this Agreement have been by mutual agreement after negotiation, with consideration by, and participation of, all of the parties hereto.  The presumption found in Civil Code Section 1654, that uncertainties in a contract are interpreted against the party causing the uncertainty to exist, is hereby waived by all parties.

33.    Mediation of Disputes.  If a dispute arises out of or relates to this Agreement or the breach thereof, the parties shall first attempt in good faith to settle the dispute by nonbinding mediation before resorting to court action or binding arbitration. Before mediation begins, the parties agree to sign a document limiting the admissibility in arbitration or any civil action of anything said, any admission made, and any documents prepared, in the course of the mediation, consistent with Evidence Code §1152.5.  IF ANY PARTY COMMENCES AN ARBITRATION OR COURT ACTION BASED ON A DISPUTE OR CLAIM TO WHICH THIS PARAGRAPH APPLIES WITHOUT FIRST ATTEMPTING TO RESOLVE THE MATTER THROUGH

24047b.doc:3053-00 © June 24, 2003 Goldstein, Gellman, Melbostad, Gibson & Harris, LLP. Any reproduction or use of this document, its content, or its format in connection with any project other than the one described is prohibited.

[PROPERTY] TENANCY-IN-COMMON AGREEMENT _____ Page 10

MEDIATION, THEN IN THE DISCRETION OF THE ARBITRATOR(S) OR JUDGE, THAT PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEY'S FEES EVEN IF THEY WOULD OTHERWISE BE AVAILABLE TO THAT PARTY IN SUCH ARBITRATION OR COURT ACTION.  This clause shall not apply if the amount in controversy is within the jurisdictional limits of the Small Claims Court.

Executed at San Francisco, California, this _____ day of _____, 2003.

_____  9-11-03      _____  10/2/03
WILLIAM CHANG                              GERARD CHANG

24047b.doc:3053-00 © June 24, 2003 Goldstein, Gellman, Melbostad, Gibson & Harris, LLP.  Any reproduction or use of this document, its content, or its format in connection with any project other than the one described is prohibited.

Exhibit "3"



San Francisco Superior Courts
Information Technology Group

## Document Scanning Lead Sheet

Sep-08-2005  4:09 pm

Case Number: CGC-05-444715

Filing Date: Sep-08-2005 3:51

Juke Box: 001    Image: 01278830

COMPLAINT

GERARD CHANG VS. CITY AND COUNTY OF SAN FRANCISCO et al

001C01278830

**Instructions:**
Please place this sheet on top of the document to be scanned.

Gerard Chang
586 Sanchez Street, San Francisco, CA 94114
Tel.: 415-252-8318

SUMMONS ISSUED
**F I L E D**
San Francisco County Superior Court

SEP 0 8 2005

GORDON PARK-LI Clerk
BY: _____
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

CITY AND COUNTY OF SAN FRANCISCO

UNLIMITED CIVIL JURISDICTION

GERARD CHANG,

        Plaintiff,

    v.

CITY AND COUNTY OF SAN FRANCISCO,
SAN FRANCISCO POLICE DEPT.,
MOBILE CRISIS UNIT,
SAN FRANCISCO GENERAL HOSPITAL
and
Does 1 to 10,

        Defendants.

Case No. CGC 05-444715

**COMPLAINT FOR ILLEGAL SEIZURE AND
ARREST, ILLEGAL IMPRISONMENT AND
CONFINEMENT, PHYSICAL ASSAULT, AND
PHYSICAL HARM**

CASE MANAGEMENT CONFERENCE SET

FEB 1 0 2006 0 9 00 AM

DEPARTMENT 212

1. Plaintiff Gerard Chang is bringing legal action against Mayor Gavin Newsom's office for the violation of Plaintiff's civil rights by San Francisco Police Officers, Mobile Crisis Unit Personnel and San Francisco General Hospital Personnel.

2. Claims against the City were filed in accordance with City procedures and a letter from the City Attorney's Office rejecting the claims was received on September 6, 2005. This is the second time Plaintiff's claim has been rejected. The first rejection letter was received sometime in May of 2005.

3. On February 2, 2005, Plaintiff was enjoying the privacy and comfort of his own home of 15 years when on or about 3:00pm members of the San Francisco Mobile Crisis Team, accompanied by 2 female officers and Peter Warner came knocking at his door. The police officers stated that they wanted to ask a couple of questions regarding a 5150 complaint and he agreed to answer their questions. The officers asked Plaintiff whether he had any thoughts of harming people or himself to which he answer categorically "No." Despite this answer, they proceeded to tell Plaintiff that they were going to take him to San Francisco General Hospital under the 5150 order and at that point he said that he wanted to contact his lawyer, Elizabeth 'Liz' T. Erhardt of Sideman and Bancroft.

The officers stopped Plaintiff from getting back into his home to make the phone call and pushed him against the door where he was then handcuffed. One of the female officers then went into his home and got the keys to his home for him. Plaintiff was wearing his pajamas at the time and was not even allowed to change into other clothing. The officers then had Plaintiff stand on the street right by their patrol car for several minutes where all of his neighbors and passers-by could see that he was being dragged by the police.

Plaintiff was then taken to San Francisco General Hospital where he was held against his will from the time he was admitted that Wednesday 2/2/05 until Friday 2/4/05. He was evaluated by the attending psychiatrist to whom he told he presented no harm to himself or others; still, he was not allowed to return to his home. The next day, when Plaintiff told the staff in charge that he wanted to go home, they told him that they were holding him 'indefinitely.' At that point, fearful for his life, he started to scream that he was being held against his will. Several staff members forcibly, like an animal, dragged him screaming to a solitary confinement room and strapped him to a torture-like bed. Then with Plaintiff screaming at them, that they were breaking the law, they physically assaulted him even further by injecting him with something that he was clearly screaming at the top of his lungs that he did not consent to being injected. Plaintiff endured the most horrific mental and physical torture that any human being and citizen of the United States of America could ever be subjected to short of being killed.

During his illegal detention at the hospital, Plaintiff's lawyer Elizabeth T. Erhardt came to see him to discuss the situation and she told Plaintiff that she was unable to get him released. She told him that the hospital was going to hold him against his will for 72 hours because there would be no judge to hear his case until then. When Plaintiff threatened legal action against the hospital and everyone else involved in his illegal detention, somehow miraculously, a judge came to the hospital to hear his case on Friday 2/4/05 and finally allowed him to go home at that point when he re-stated once again, that he presented no danger to himself or to others.

Plaintiff walked home in his pajamas, all the way from San Francisco General Hospital. He had been waiting for his lawyer Elizabeth Erhardt to bring the keys to his home when he was welcomed into the home of his neighbors Ron and Nanci Slayen. It was very cold that evening and thankfully the Slayens were home to offer a jacket, warm tea and some food for comfort.

4.  Plaintiff reported this crime to District Attorney Kamala Harris, Chief of Police Heather Fong and the Office of Citizen's Complaints. Dennis Herrera, City Attorney has also been notified. To this date, there has been no satisfactory investigation or answers to his complaint and it seems everyone is only interested in 'sweeping' this under the rug; a sort of 'forget about the rights of the Plaintiff' attitude. This is an absolutely incredibly callous attitude on the part of the people and entities which are supposed to safeguard the citizens' freedom and to uphold the law.

Based upon the foregoing, Plaintiff prays for $5,000,000.00 judgment against the criminals and city agencies that perpetrated this crime for the damages sustained by the Plaintiff. These damages are for medical bills present and future, illegal seizure from his home, illegal detention, mental and emotional suffering, diminished mental capacity, physical assault and bodily harm, general damages, compensatory damages and punitive damages.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: September 8, 2005

_____
Gerard Chang, Plaintiff

- 2

Exhibit "4"



San Francisco Superior Courts
Information Technology Group

## Document Scanning Lead Sheet

Sep-22-2005  3:04 pm

Case Number: CUD-05-615866

Filing Date: Sep-22-2005 3:00

Juke Box: 001    Image: 01288167

COMPLAINT

WILLIAM CHANG VS. GERARD CHANG et al

001C01288167

**Instructions:**
Please place this sheet on top of the document to be scanned.

1  ANDREW M. ZACKS SBN 147794
   ERIC D. McFARLAND SBN 214245
2  ZACKS UTRECHT & LEADBETTER, P.C.
   235 Montgomery Street, Ste. 1130
3  San Francisco, CA 94104
   Telephone: (415) 956-8100
4  Facsimile: (415) 288-9755

5  Attorneys for Plaintiff
   William Chang

6

**FILED**

San Francisco County Superior Court

SEP 2 2 2005

GORDON PARK-LI, Clerk

BY: _____
Deputy Clerk

**SUMMONS ISSUED**

7                    SUPERIOR COURT OF CALIFORNIA

8                 CITY AND COUNTY OF SAN FRANCISCO

9                      LIMITED CIVIL JURISDICTION

10  WILLIAM CHANG,                    )   Case No. **CUD 0 5 6 1 5 8 6 6**
                                      )
11          Plaintiff,                )
                                      )   **COMPLAINT FOR UNLAWFUL**
12          vs.                       )   **DETAINER**
                                      )
13  GERARD CHANG and                  )
14  DOES 1-10,                        )
                                      )
15          Defendants.              )

16                        <u>**GENERAL ALLEGATIONS**</u>

17      Plaintiff WILLIAM CHANG ("plaintiff") alleges:

18      1.      Plaintiff is a record owner of the real property located at 584-586-

19  588 Sanchez Street, San Francisco, CA 94114 (the "property").  Plaintiff is

20  authorized by the tenancy-in-common agreement for the property to prosecute

21  this action.  A true and correct copy of the tenancy-in-common agreement for the

22  property is attached hereto as Exhibit "A" (the "Agreement").

23      2.      By this action, plaintiff is seeking possession of a portion of the

24  property commonly known as 586 Sanchez Street, San Francisco, CA 94114 (the

25  "premises").

26

27  _____
    <u>Chang v. Chang</u>
28  Complaint for Unlawful Detainer                          Page 1 of 5

ORIGINAL

( ( 

3.    Defendant WILLIAM CHANG ("defendant") is a record owner of the property who is in possession of the premises under the terms of the Agreement.

4.    Plaintiff is not aware of the true identities of defendants DOES 1-10, so plaintiff sues said defendants pursuant to Code of Civil Procedure § 474 accordingly; plaintiff will amend this complaint with leave to amend when plaintiff discovers said defendants' true identities.

5.    Defendant is permitted to occupy the premises for residential purposes under the terms, conditions, and covenants of the Agreement.

6.    Under the Agreement, defendant is responsible for and required to pay his *pro rata* share of all mortgage payments for the property.  In addition, under the Agreement, if defendant fails or refuses to pay his *pro rata* share of the mortgage payments for the property, defendant's right to occupy any portion of the property, including but not limited to the premises, immediately terminates, and defendant is subject to eviction from the premises.

7.    By signing the Agreement, defendant expressly waived any right to occupy the premises while in default on his *pro rata* share of the mortgage payments for the property.  Defendant is currently in default on his *pro rata* share of the mortgage payments for the property, and has waived his right to occupy the premises accordingly.

8.    Defendant failed to pay his *pro rata* share of the mortgage payments for the property for August 2005, such that the sum of $3,402.20 was unpaid by defendant; therefore, defendant is in default under the terms of the Agreement and has waived his right to occupy the premises.

9.    Defendant failed to pay his *pro rata* share of the mortgage payments for the property for September 2005, such that the sum of $3,402.20 was unpaid

(          (

1  by defendant; therefore, defendant is in default under the terms of the Agreement

2  and has waived his right to occupy the premises.

3       10.    On September 16, 2005, plaintiff caused a NOTICE OF DEFAULT

4  UNDER TENANCY-IN-COMMON AGREEMENT (the "notice") to be served on

5  defendant.  A true and correct copy of the notice is attached hereto as Exhibit "B."

6       11.    The notice states the whole amount of defendant's *pro rata* share of

7  the mortgage payments for the property that are in default and required

8  defendant to pay the whole amount of his *pro rata* share of the mortgage

9  payments for the property or vacate and surrender possession of the premises.

10  The notice declares a forfeiture of defendant's right to occupy the premises under

11  the Agreement because defendant failed to pay his *pro rata* share of the mortgage

12  payments for the property.

13       12.    The notice was served on defendant by delivering a copy of the notice

14  to defendant personally pursuant to Code of Civil Procedure § 1162.1.

15       13.    Defendant failed to pay his *pro rata* share of the mortgage payments

16  for the property or vacate and surrender possession of the premises as required

17  by the notice; plaintiff is entitled to possession of the premises accordingly.

18       14.    Defendant currently occupies the premises while in default under the

19  Agreement, and without plaintiff's consent.

20       15.    Due to defendant's failure to pay his *pro rata* share of the mortgage

21  payments for the property, plaintiff is entitled to recover possession of the

22  premises under Code of Civil Procedure § 1161(2).

23       16.    Due to defendant's failure to pay his *pro rata* share of the mortgage

24  payments for the property, plaintiff is entitled to recover possession of the

25  premises under Code of Civil Procedure § 1162(3).

26

27

28  Chang v. Chang
    Complaint for Unlawful Detainer                   Page 3 of 5

17.   The daily rental value of the premises is at least $113.

WHEREFORE, plaintiff prays for judgment against defendants for:

1.   Restitution of the premises;

2.   Forfeiture of defendant's right to occupy the premises under the Agreement;

3.   The amounts demanded in the notice;

4.   Consequential damages according to proof at trial, including damages for the reasonable rental value of the premises after termination of defendant's right to occupy the premises under the Agreement (exclusive of the money demanded in the notice); and

5.   Such other and further relief as the court deems just and proper.

Dated: September 21, 2005.

ZACKS UTRECHT & LEADBETTER, P.C.

By: Eric D. McFarland

Attorneys for plaintiff William Chang

**FAXED**

<u>VERIFICATION</u>

1

2          I, William Chang, declare:

3          I have read the contents of the above complaint for unlawful detainer. I

4    declare under penalty of perjury under the laws of the state of California that the

5    foregoing is true and correct. Executed in San Francisco, California, on

6    September 21, 2005.

7

8                                    _____
                                     Eric D. McFarland
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   <u>Chang v. Chang</u>
     Complaint for Unlawful Detainer                              Page 5 of 5
28

# TENANCY-IN-COMMON OWNERSHIP AGREEMENT
## 584-586-588 Sanchez Street, San Francisco, CA

The parties to this Agreement are WILLIAM CHANG and GERARD CHANG, both single men who purchased the residential real property commonly described as 584-588 Sanchez Street, San Francisco, CA in 1999. The purpose of this Agreement is to set forth in writing the parties' agreements regarding the ownership, maintenance, and sale of 584-586-588 Sanchez Street, San Francisco, CA, which consists of three (3) individual dwelling units.

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth in this Agreement, the parties agree as follows:

1.  Ownership, Residence, Possession and Control.  The parties shall maintain title to 584-588 Sanchez Street, San Francisco, CA as tenants in common, with WILLIAM CHANG owning an undivided thirty percent (30%) interest in the property, and GERARD CHANG owning an undivided seventy percent (70%) interest in the property. For the purposes of this Agreement, and subject to any subsequent adjustment of ownership interests permitted hereunder, each party's "pro rata" share shall be the percentage associated with that party's name in this paragraph. Each party shall have the exclusive right to occupy as his principal or secondary residence, or rent out for his own benefit subject to San Francisco Rent Control Ordinance restrictions, that portion of 584-588 Sanchez Street, San Francisco, CA described next to their names below:

WILLIAM CHANG          584 Sanchez (lower unit)
GERARD CHANG          586 Sanchez (upper unit) and garage

The cottage rental, 588 Sanchez, shall be under the sole management and control of GERARD CHANG, and any income derived from it shall belong solely to GERARD CHANG.

The property, and any interest therein, may be sold, assigned, encumbered, or otherwise conveyed only by unanimous written agreement signed by all parties, except as specified elsewhere in this Agreement. Amendment of this Agreement, including without limitation, any reallocation of the exclusive rights defined herein, shall be only by unanimous written agreement signed by all parties. All other decisions, except as specified elsewhere in this Agreement, shall be made with the vote of at least 50% of the ownership interest. Any vote by the parties (other than by unanimous written consent) shall be taken with advance written notice to all parties, by personal delivery or certified mail, served or mailed at least fourteen (14) calendar days prior to the vote.

2.  Initial Capital Accounts.  The parties acknowledge that each has contributed his pro rata share to the purchase and closing costs of 584-588 Sanchez Street, San Francisco, CA.

24047b.doc:3053-00 © June 24, 2003 Goldstein, Gellman, Melbostad, Gibson & Harris, LLP. Any reproduction or use of this document, its content, or its format in connection with any project other than the one described is prohibited.

3.   <u>Adjustments to Equity</u>.  No party may make any voluntary contribution of capital or other adjustments to his equity in 584-588 Sanchez Street, San Francisco, CA without the consent of the other party.  Except as otherwise specifically stated herein, no party may withdraw capital or borrow against his equity in 584-588 Sanchez Street, San Francisco, CA, or transfer any interest therein to any other party or any outside party without the consent of the other party, which consent shall not be unreasonably withheld.  No party shall be entitled to receive any interest on his capital contribution.

4.   <u>Regular Expenses</u>.  Each party is responsible for and shall pay as they become due that party's pro rata share of all mortgage payments (whether or not a party is listed as a borrower on the mortgage), property taxes, and insurance premiums, repairs to common areas, costs of capital improvements made with the approval of the parties as provided in this Agreement, management fees, professional fees, routine maintenance costs and other usual expenses associated with 584-588 Sanchez Street, San Francisco, CA (hereafter, "regular expenses").  The cost of water shall be allocated equally between the three units.  Other utilities are separately metered to each unit.  Any increase in real property taxes resulting from a transfer by a party of his interest in 584-588 Sanchez Street, San Francisco, CA in accordance with this Agreement shall be the sole responsibility of the party to whom such interest is transferred in the year of the transfer and in all subsequent years, and such party shall pay such amount prior to the due date thereof.  Further, in the event the total assessed value of 584-588 Sanchez Street, San Francisco, CA is increased as a direct consequence of a party's improvements to the property pursuant to the paragraph titled 'Capital Improvements', below, that party shall pay the full increase in property taxes attributed to the value increase.  The parties agree that the definition of "common areas" then in effect under California condominium law shall determine, for the purposes of this Agreement, those areas of the property for which the parties are jointly responsible.  Each party reserves a non-exclusive easement for ingress, egress and support and for utilities, at reasonable places throughout the common areas.

*90 · PMS Wue*

5.   The parties further agree that the existing first mortgage in the approximate sum of $600,000, and the current equity line in the approximate sum of $150,000 shall be combined and refinanced in a new single first mortgage on the subject real property within sixty (60) days of the signing of this agreement.  GERARD CHANG agrees that he is solely liable for the current equity line of $150,000, and any interest accruing thereon.  The parties agree that they are liable pro rata for the remaining $600,000 portion of the mortgage and any interest accruing thereon.  GERARD CHANG agrees that he shall solely and individually be responsible for paying down the $150,000 (former equity line portion) of the new first mortgage and related interest on said $150,000 sum at the time his interest in the property is sold, less any contributions against said sum made by GERARD CHANG prior to the sale of his interest.  Said interest on the $150,000 sum shall begin to accrue on the date the first mortgage payment of the newly consolidated first mortgage is paid.

6.   <u>Mortgage Prepayment</u>.  A party may prepay all or a portion of his share of mortgage debt provided (i) the parties' mortgage permits prepayment without penalty, (ii)

24047b.doc:3053-00 © June 24, 2003 Goldstein, Gellman, Melbostad, Gibson & Harris, LLP.  Any reproduction or use of this document, its content, or its format in connection with any project other than the one described is prohibited.

the party successfully arranges a reamortization so that the total monthly payment is reduced to reflect the prepayment, and, (iii) the party pays any associated reamortization fee. In such event, the party making the prepayment shall receive the full benefit of the monthly payment reduction. The parties shall thereafter adjust their shares of mortgage debt set forth in paragraph 3, above, to reflect the changes in each party's share of mortgage debt.

   7.   Bank account. The parties shall jointly establish a bank account which shall require two signatures for issuing checks, and shall further secure automatic debit of their monthly mortgage payments from the joint account.

   8.   Rental of Individual Units. Either party may rent his individual dwelling unit, provided, however, that the then occupying parties shall first approve any prospective tenant, subtenant or roommate, which approval shall not be unreasonably withheld. However, approval of the tenant(s) in the cottage by WILLIAM CHANG shall not be required. Any rent received by a party shall be paid directly to that party, and that party shall be entitled to those funds unless that party is in default of that party's obligations (described below), in which case said rental sums may be required by a court to be applied to that parties obligations under paragraph 3 herein. In the event WILLIAM CHANG elects to evict the current tenant of 584 Sanchez under an owner move-in eviction to obtain occupancy, GERARD CHANG shall approve of the eviction however, WILLIAM CHANG hereby expressly indemnifies GERARD CHANG and agrees to hold him harmless from any and all claims stemming from said action including any and all damages, judgments, costs and attorneys fees. Further, WILLIAM CHANG agrees to be solely responsible for any and all expenses, costs, legal fees necessary to carry out the owner move-in eviction. Any subsequent evictions for cause shall be at the sole expense of the party who has control of the unit described in paragraph 1. In the event GERARD CHANG elect to evict a tenant at 586 Sanchez, WILLIAM CHANG shall approve of the eviction. WILLIAM CHANG shall not oppose any eviction proceedings of tenants in 588 Sanchez.

   9.   Extraordinary Services by a Party. Any party performing extraordinary services (such as bookkeeping or tax preparation) benefiting the property may charge as a regular expense of the property, a reasonable fee for services rendered, which fee shall not exceed the cost of obtaining similar services from a non-party.

   10.   Capital Improvements. Substantial capital improvements or replacements to common areas of 584-588 Sanchez Street, San Francisco, CA (those portions of the property not within the confines of the units allocated to WILLIAM or GERARD in paragraph 1), shall be made only with both parties' written consent, provided that no party may veto the replacement when reasonably required of any foundation, load bearing wall, roof or common building system. Each party shall pay his pro rata share of said costs when due. Improvements to the interior of any individual unit of the property which would not otherwise constitute reasonably necessary repair or replacement of existing structures, systems or fixtures shall be at the sole election, expense and property tax liability of the party authorizing same for his assigned unit, and shall in no way affect

24047b.doc:3053-00 © June 24, 2003 Goldstein, Gellman, Melbostad, Gibson & Harris, LLP. Any reproduction or use of this document, its content, or its format in connection with any project other than the one described is prohibited.

www.pacificdestinationz.co.nz

the capital accounts of the parties; provided, however, that if the parties unanimously concur that the improvement will significantly benefit the entire property, and increase the total value thereof, then by written addendum to this Agreement, signed by all parties, specifying the nature of the improvement and the cost thereof, the cost of said improvement, less straight-line depreciation per IRS regulations, shall be recoverable by the party paying same at the time said party's interest in the property shall be sold pursuant to the terms of this Agreement. All work on or about 584-588 Sanchez Street, San Francisco, CA shall be completed to applicable building and safety codes and with all necessary permits.

    11.  <u>Tax Allocation</u>. The parties hereby allocate pro rata among themselves all tax benefits arising from the purchase, ownership or use of the property or the timely payment of regular expenses; provided, however, that tax benefits arising from individual improvements undertaken pursuant to the preceding paragraph shall be allocable only to the party bearing the cost of said improvements.

    12.  <u>Insurance</u>. The parties agree to maintain insurance on the property sufficient to protect their investment against loss from fires, floods or other insurable causes. The parties shall maintain an insurance policy insuring themselves against public liability incident to ownership and use of 584-588 Sanchez Street, San Francisco, CA. The combined limits of coverage shall not be less than one million dollars ($1,000,000) for injury, death and property damage. The policy shall contain a severability of interest endorsement precluding the insurer from denying coverage to a named insured because his act or omission created liability in favor of another insured. The policy will contain landlord/rental coverage. Each such insurance policy shall (i) provide a waiver of subrogation rights against the parties, (ii) state that coverage be primary and not affected by any other insurance held by a party, and (iii) require that at least thirty (30) days prior written notice be given to all parties by the insurer before cancellation. Such insurance shall be written by an insurance company qualified to do business in California with a rating of at least an "A" by Best's Insurance Reports or equivalent.

    13.  <u>Default</u>. In the event a party fails or refuses to pay that party's pro rata share of the regular expenses including debt service for more than seven (7) days after they are due, or files a voluntary petition in bankruptcy, is adjudicated a bankrupt, becomes insolvent, makes an assignment for the benefit of creditors, or applies for or consents to the appointment of a receiver or trustee with respect to any substantial part of that party's assets, the other party may make such payments on behalf of the defaulting party, the amount of which payments shall constitute a secured lien upon the defaulting party's interest in 584-588 Sanchez Street, San Francisco, CA, subject to enforcement as provided under applicable law including, without limitation, sale pursuant to California Civil Code §§2924, *et seq.* or by judicial foreclosure. The defaulting party's right to occupy any portion of 584-588 Sanchez Street, San Francisco, CA under this Agreement shall terminate immediately upon default, and the defaulting party shall be subject to Eviction from the premises following service of any legally required notices. By executing this Agreement, each party expressly agrees to waive any legal right to occupy the premises while in default. A party may proceed with legally required notices related

24047b.doc:3053-00 © June 24, 2003 Goldstein, Gellman, Melbostad, Gibson & Harris, LLP. Any reproduction or use of this document, its content, or its format in connection with any project other than the one described is prohibited.

to Eviction immediately upon default by another party.  In addition to any other remedy
so provided, the non-defaulting parties shall recover all such sums from the defaulting
party at the time said party's interest in the property shall be sold pursuant to the terms of
this Agreement.  Interest on any sums advanced by the non-defaulting parties shall accrue
at the simple rate of Bank of America Prime Rate plus 2 % per annum, until paid in full.
Each party waives the benefit of statutory debtor protection, including homestead and
exemption rights, to the full extent permitted by California and Federal law with respect
to enforcement of obligations described in this Agreement.  For the purpose of securing
performance of each of the obligations described in this Agreement, each party hereby
pledges that party's interest to the other as security for such obligations and
acknowledges that such interest is subject to foreclosure rights, and hereby grants,
transfers and conveys that party's ownership interest in 584-588 Sanchez Street, San
Francisco, CA to Fidelity National Title Insurance Company, a corporation, as trustee,
and to each other, as beneficiaries, under the terms and conditions of that certain fictitious
deed of trust recorded October 23, 1961, in Book A332 at page 905 of the Official
Records of San Francisco County, California, which are hereby incorporated by
reference.  In the event of default as hereinabove described, each non-defaulting party is
granted the power to sell the defaulting party's interest in the property at a public sale
conducted pursuant to the applicable provisions of California law for exercise of a non-
judicial power of sale in a deed of trust.  Any non-defaulting party may bid at such a sale.
Alternatively, any non-defaulting party may seek judicial foreclosure or execution once
the defaulting party's obligation has been reduced to a judgment.

14.   Sale of Entire Property.  If the parties unanimously agree that 584-588
Sanchez Street, San Francisco, CA should be sold, and subject to any right of first refusal
vested in a party, described below, the property shall immediately be listed for sale with a
licensed real estate broker, with the listing price to be set by agreement of the parties, or
if no agreement can be reached, by the listing broker.  The property shall be made
available for inspection according to local practice.  The balance of the sale price after
repayment of all mortgages, taxes and commissions and capital improvement costs
allowed under paragraph 7, above, shall be shared pro rata by the parties.  Proration of
property taxes shall be allocated pro rata.  Provided, however, that if any party is in
arrears on any regular expenses, including debt service, such regular expenses shall be
repaid before any sums are allocated to the party in arrears.

15.   Lender Approval Requirement.  The parties understand and acknowledge
that if an ownership interest in 584-588 Sanchez Street, San Francisco, CA is transferred
to an individual who is *not* a signatory to the parties' mortgage (deed of trust), and such
transfer is not approved by the lender, such lender could declare the entire outstanding
balance of the mortgage immediately due and payable (an "acceleration") and, in the
event of non-payment, initiate foreclosure of the property.  Accordingly, notwithstanding
anything to the contrary in this Agreement, no party shall transfer any interest in 584-588
Sanchez Street, San Francisco, CA to an individual who is not already a signatory to the
parties' mortgage unless: (i) the mortgage lender approves the transfer in writing, or (ii)
all parties agree, in writing, to allow the transfer without lender approval and assume the
resulting risk of acceleration and foreclosure.  In the event all parties do not agree to

24047b.doc:3053-00 © June 24, 2003 Goldstein, Gellman, Melbostad, Gibson & Harris, LLP.  Any reproduction or
use of this document, its content, or its format in connection with any project other than the one described is
prohibited.

allow the transfer without lender approval, each party shall cooperate in good faith in securing such approval. Such cooperation shall include, without limitation, submitting all documentation required by the mortgage lender, and portraying the party's creditworthiness in the best possible light. All charges imposed by the mortgage lender shall be paid by the prospective transferor.

16.   Transfer of Individual Interests. A party may transfer his entire interest in 584-588 Sanchez Street, San Francisco, CA only as set forth herein. Any other purported transfer of all or part of a party's interest shall be void and of no effect against the property, any other party, any creditor of the parties or any claimant against the parties. Subject to the foregoing, a party may transfer his interest:

   i.      By mutual agreement of the parties;

   ii.     To a revocable inter vivos trust of which the party is a beneficiary;

   iii.    By succession or testamentary disposition on death; or,

   iv.     To any person after the party making the transfer has first offered the other party his right of first refusal in accordance with the provisions of this Agreement, provided that the non-selling parties shall have the right to approve the transferee, which approval shall not be unreasonably withheld. Any approved transferee shall agree in writing to be bound by all terms and conditions of this Agreement.

17.   Right of First Refusal.  If any party wishes to sell his interest in 584-588 Sanchez Street, San Francisco, CA, the other party shall have the right of first refusal to purchase the selling party's interest by meeting any bona fide offer of sale on the same terms and conditions of such offer, and on failure to notify the selling party of his intentions to exercise this right of first refusal within twenty (20) days, or failure to complete said purchase within sixty (60) days after written notice thereof from the selling party, the selling party shall be free to sell his interest in the property to such third person in accordance with the terms and conditions of the offer, provided that the other party shall have the right to approve or reject the purchaser, which approval shall not be unreasonably withheld, further provided that any purchaser shall agree in writing to be bound by all terms and conditions of this Agreement.

18.   Death of a Party.  In the case of a party's death this Agreement shall not terminate and the surviving party shall continue to own and control 584-588 Sanchez Street, San Francisco, CA under the terms of this Agreement with any successors or transferees of the deceased party, provided, however, that any such successors or transferees shall not participate in the management of the property, nor in decisions by the surviving party regarding same, nor shall they have any rights to use or occupy the property, nor shall they receive the benefit of any rents in excess of their pro rata share of ordinary expenses; further provided that any such successors or transferees shall not be obligated beyond their pro rata share for any regular or other expenses associated with the property. Alternatively, the surviving party may purchase a deceased party's interest at the Specified Purchase Price hereinbelow defined by giving written notice to the heirs or

24047b.doc:3053-00 © June 24, 2003 Goldstein, Gellman, Melbostad, Gibson & Harris, LLP.  Any reproduction or use of this document, its content, or its format in connection with any project other than the one described is prohibited.

personal representatives of the deceased party within thirty (30) days after receiving notice of a party's death. Said purchase shall be completed within sixty (60) days of the election to purchase, or the earliest date permitted under any applicable probate administration.

19.     Specified Purchase Price.  The specified purchase price of a party's interest referred to in this agreement is determined as follows.  The Specified Purchase Price shall be the then current fair market value of 584-588 Sanchez Street, San Francisco, CA; less five percent (5%); multiplied by the deceased or selling party's pro rata percentage interest as set forth in paragraph 1, above; less prorated property taxes; less the party's percentage of outstanding mortgage debt set forth in paragraph 3, above; and then adjusted (upwards or downwards) by any amounts then owing pursuant to this Agreement.  If the fair market value of the property cannot be determined by mutual agreement, then within fifteen (15) days following written demand by any party, or by the heirs or representatives of any deceased party, the disputing parties either:  (a) shall jointly appoint a Qualified Appraiser for the purpose of determining the fair market value of 584-588 Sanchez Street, San Francisco, CA; or, (b) failing this joint action, shall each separately designate a Qualified Appraiser and, within five (5) days after their appointment, the two designated Qualified Appraisers shall jointly designate a third Qualified Appraiser, whose appraisal of the fair market value of said property shall be binding and conclusive.  A "Qualified Appraiser" shall be a person:  (i) having at least two (2) years experience appraising real estate similar to 584-588 Sanchez Street, San Francisco, CA in the area where said property is located, (ii) holding a valid real estate sales, brokerage or appraisal license, (iii) having no prior business or personal relationship with any party to this Agreement, and (iv) agreeing in writing to complete an appraisal within fourteen (14) calendar days of retention.  The failure of any party to appoint an appraiser within the time allowed shall be deemed equivalent to appointing the appraiser appointed by the other party, and that appraisal shall be the fair market value. The fees of the appraiser(s) shall be treated as an item of the regular expenses under paragraph 3, above.

20.     Expenses During Sale.  The parties shall be jointly responsible, pro rata, for all regular expenses for the property during any period in which the property is up for sale.

21.     Damage and Destruction; Condemnation.  If 584-588 Sanchez Street, San Francisco, CA is destroyed, in whole or in part, or if a portion of the property is condemned, the parties shall agree whether to repair or restore the property so damaged or destroyed, or the portion of the property not condemned; if the party's cannot agree, then the 70% owner shall have the final determination.  In the event the parties determine that 584-588 Sanchez Street, San Francisco, CA shall *not* be repaired or restored, the property shall be sold.  The proceeds of such sale (together with any insurance proceeds and condemnation award), or, in the case of a total condemnation of 584-588 Sanchez Street, San Francisco, CA, the condemnation award shall be shared by the parties in proportion to the fair market value of their respective interests in 584-588 Sanchez Street, San Francisco, CA, as determined by unanimous agreement of the parties, or failing

24047b.doc:3053-00 © June 24, 2003 Goldstein, Gellman, Melbostad, Gibson & Harris, LLP.  Any reproduction or use of this document, its content, or its format in connection with any project other than the one described is prohibited.

same, by appraisal the fair market value of their respective interests pursuant to the relevant provisions for selecting an appraiser set forth in paragraph 16, above, subject to adjustment for any amounts then owing pursuant to this Agreement, including mortgage debt. Any insurance proceeds or condemnation award for a partial condemnation of the property that are unused after repair and restoration of the property shall be divided, pro rata, among the parties.

22.     Animals. No animals except dogs under 40 pounds, domestic cats, fish, and birds inside bird cages may be kept on or about 584-588 Sanchez Street, San Francisco, CA. No more than two (2) four-legged pets may be kept by a party. Permitted animals shall not be kept, bred, or raised for commercial purposes. Any party can prohibit the keeping of any animal that constitutes a nuisance. All parties who keep pets on the property (i) shall keep such pet under reasonable control at all times, (ii) shall immediately clean up after such pet, (iii) shall be liable to the other parties and all persons for any damage to persons or property proximately caused by such pet, and (iv) shall indemnify and hold harmless the other parties against any and all loss, cost or liability, including attorneys' fees, arising out of claims related to such pet. The provisions of this Section may only be altered with unanimous approval of the parties.

23.     Waiver of Partition. The parties each waive their respective rights to seek or obtain judicial partition of 584-588 Sanchez Street, San Francisco, CA for a period of five (5) years from the date of this Agreement. Thereafter, no waiver of any right to obtain judicial partition shall be implied by virtue of any provision of this Agreement, including any right of first offer or refusal. This waiver of partition shall apply to any person or entity acquiring any right, lien or interest in said property. No party shall attempt to enforce his or her partition rights hereunder without first making bona fide efforts to sell her or his interest in the property for at least six months, unless sale of an individual interest in the property has become impossible or unreasonably difficult by operation of local law.

24.     Parking. The single car garage shall be used solely by GERARD CHANG. Major repair of a motor vehicle is not permitted anywhere on the property. Other storage shall be allocated pro rata between the parties.

25.     Subordination. This Agreement alone shall govern all rights with respect to the use, possession, enjoyment, management and disposition of 584-588 Sanchez Street, San Francisco, CA. The parties hereby relinquish all common law or statutory rights with respect to the use, possession, enjoyment, management and disposition of 584-588 Sanchez Street, San Francisco, CA which might otherwise be available as a tenant-in-common.

26.     No Partnership. This Agreement is not intended to create a partnership, joint venture or subdivision, but to set forth the terms and conditions upon which each party and subsequent transferees shall hold undivided interests in 584-588 Sanchez Street, San Francisco, CA, nor shall the use by the parties of a fictitious business name, if any, to refer to their activities infer any such intention. No party hereto or subsequent

24047b.doc:3053-00 © June 24, 2003 Goldstein, Gellman, Melbostad, Gibson & Harris, LLP. Any reproduction or use of this document, its content, or its format in connection with any project other than the one described is prohibited.



transferee is authorized to act as agent or on behalf of the other party, to do any act which will be binding on any other party, or to incur any expenditures with respect to the property except as specifically provided in this Agreement.

27.   Attorney's Fees and Costs.  In the event that arbitration or other litigation is commenced by either party to interpret or enforce this Agreement, or which in any way arises out of this Agreement, the prevailing party shall recover from the other party his reasonable attorney's fees and all other costs of litigation or arbitration.

28.   Nonassignability; Binding on Heirs.   Because this Agreement contemplates the sharing of a residence as well as the ownership of property, a party's rights and obligations hereunder may not be assigned without the express, written consent of the other party to this Agreement.  This Agreement shall be binding on the heirs and estates of the parties.

29.   Integration; Written Modification.  This Agreement sets forth the entire agreement of the parties regarding 584-588 Sanchez Street, San Francisco, CA and supersedes any preexisting oral or written agreements by and between the parties hereto. Any modification, addition, or amendment to this Agreement must be in writing and signed by the parties hereto.

30.   Severability.  In the event any portion of this Agreement is held to be unenforceable for any reason, the balance of this Agreement shall remain in full force and effect and shall not be affected by the unenforceability of any portion of this Agreement.

31.   Applicable Law.  This Agreement shall be construed and interpreted according to the laws of the State of California.

32.   Negotiation and Drafting.  The parties acknowledge that the firm of Goldstein, Gellman, Melbostad, Gibson & Harris, LLP, has represented only GERARD CHANG in the drafting of this Agreement, and in all matters relating thereto, and that said firm has advised the other party to this agreement to obtain independent counsel for the review of same prior to signing.  Notwithstanding, the determination of the terms of, and the drafting of, this Agreement have been by mutual agreement after negotiation, with consideration by, and participation of, all of the parties hereto.  The presumption found in Civil Code Section 1654, that uncertainties in a contract are interpreted against the party causing the uncertainty to exist, is hereby waived by all parties.

33.   Mediation of Disputes.  If a dispute arises out of or relates to this Agreement or the breach thereof, the parties shall first attempt in good faith to settle the dispute by nonbinding mediation before resorting to court action or binding arbitration. Before mediation begins, the parties agree to sign a document limiting the admissibility in arbitration or any civil action of anything said, any admission made, and any documents prepared, in the course of the mediation, consistent with Evidence Code §1152.5.  IF ANY PARTY COMMENCES AN ARBITRATION OR COURT ACTION BASED ON A DISPUTE OR CLAIM TO WHICH THIS PARAGRAPH APPLIES WITHOUT FIRST ATTEMPTING TO RESOLVE THE MATTER THROUGH

24047b.doc:3053-00 © June 24, 2003 Goldstein, Gellman, Melbostad, Gibson & Harris, LLP.  Any reproduction or use of this document, its content, or its format in connection with any project other than the one described is prohibited.

[PROPERTY] TENANCY-IN-COMMON AGREEMENT                                    Page 10

MEDIATION, THEN IN THE DISCRETION OF THE ARBITRATOR(S) OR JUDGE, THAT PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEY'S FEES EVEN IF THEY WOULD OTHERWISE BE AVAILABLE TO THAT PARTY IN SUCH ARBITRATION OR COURT ACTION. This clause shall not apply if the amount in controversy is within the jurisdictional limits of the Small Claims Court.

Executed at San Francisco, California, this _____ day of _____, 2003.

_____ 9-11-03          _____ 10/2/03
WILLIAM CHANG                             GERARD CHANG

24047b.doc:3053-00 © June 24, 2003 Goldstein, Gellman, Melbostad, Gibson & Harris, LLP.  Any reproduction or use of this document, its content, or its format in connection with any project other than the one described is prohibited.

**NOTICE OF DEFAULT UNDER TENANCY-IN-COMMON AGREEMENT**

TO:   Gerard Chang
      and All Occupants in Possession of:
      586 Sanchez Street,
      San Francisco, CA 94119 (the "premises")

YOU ARE HEREBY NOTIFIED that you are in breach of paragraph 3 of the Tenancy-In-Common Ownership Agreement for 584-586-588 Sanchez Street, San Francisco, CA (the "Agreement") because you have failed to pay your *pro rata* share of the mortgage for the property located at 584-586-588 Sanchez Street, San Francisco, CA (the "property") for the months of August 2005 and September 2005. You are in default under paragraph 10 of the Agreement accordingly, and have waived any legal right to occupy the premises as a result.

William Chang, as an owner of the property and signatory to the Agreement, hereby elects to and does declare an immediate forfeiture of your right to occupy the premises under paragraph 10 of the Agreement because you have failed to pay your *pro rata* share of the mortgage for the Property as stated immediately below:

| | | |
|---|---|---|
| ● August, 2005 | → | $3,402.20 |
| ● September, 2005 | → | $3,402.20 |

**TOTAL:   $6,804.40**

PLEASE TAKE NOTICE that, pursuant to California Code of Civil Procedure §1161(2) and 1161(3), within three (3) days after service of this notice on you, you are required to pay your *pro rata* share of the mortgage for the property as specifically described in this notice, or quit and deliver up possession of the premises to William Chang. You must pay your *pro rata* share of the mortgage for the property as stated in this notice by cash or by check payable to "William Chang", and said payment must be delivered to Zacks Utrecht & Leadbetter, P.C., 235 Montgomery Street, Suite 1130, San Francisco, CA 94104. Telephone: 415.956.8100, Business hours: 10:00 a.m. - 5:00 p.m., Monday - Friday. In the alternative, you are required to vacate and deliver possession of the premises by surrendering all keys to the premises in your possession, custody, or control to Zacks Utrecht & Leadbetter, P.C., within three (3) days after service of this notice upon you.

If you fail to comply with this notice, William Chang will institute legal proceedings against you to: (1) declare a forfeiture of your right to occupy the premises; and (2) recover possession of the premises, the mortgage payments demanded in this notice, and costs and damages to the extent they may be available.

Dated: September 15, 2005.

By: *William Chang*
    William Chang

584-586-588 Sanchez Street, San Francisco, CA                        Page 1 of 1

Exhibit "5"

Gerard Chang
In Pro Per
586 Sanchez Street
San Francisco, CA  94114
Tel.: 415-252-8318

FILED

'05 DEC 13  PM 3: 46

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

**C 05    5166**

GERARD CHANG,                                     ) Case No. _____
                                                  )
        Plaintiff,                                )
                                                  )
    vs.                                           ) COMPLAINT FOR BREACH OF FIDUCIARY
                                                  ) DUTY, VIOLATION OF US PATRIOT ACT,
GREATER BAY BANCORP,                              ) VIOLATION OF FAIR LABOR STANDARDS,
CHERYL E. HOWELL,                                 ) VIOLATION OF CIVIL RIGHTS
KRYSTYNA MARCINIAK,                               )
CATHLEEN COLGAN                                   ) DEMAND FOR JURY TRIAL
ERIC LEE,                                         )
and DOES 1 TO 50,                                 )
                                                  )
        Defendants.                               )
                                                  )

**3Z**

1. **Jurisdiction**. This Court has jurisdiction over this complaint because it arises under the laws of the

   United States of America.

2. **Venue**. Venue is appropriate in this Court because all the defendants conduct business in this district

   and reside in this district.

3. **Intradistrict Assignment**. This lawsuit should be assigned to the San Francisco Division of this Court

   because San Francisco is a renowned location for businesses providing the best financial and fiduciary

   services in the United States of America.  The claims which give rise to this lawsuit are related to

   Banking, Financial Services and Fiduciary Services, 12 USC Section 92a and sections of 18 USC

   Section US PATRIOT Act, specifically directed at Banks and Financial Institutions.

COMPLAINT                                                                    Page 1 of 5
Gerard Chang v. Greater Bay Bancorp, et al.

4.  Plaintiff was hired by Defendant Greater Bay Bancorp as a Vice President and Trust Officer of their Trust Company, Greater Bay Trust Company as of 4/16/2001.

5.  Plaintiff's was offered a base salary of $85,000.00 plus 20% Bonus and Stock Options.

6.  Plaintiff's professional experience is in the trust administration of employee benefits retirement plans. Greater Bay Bancorp hired Plaintiff to be the trust account administrator of their employee benefits plans and some individual retirement accounts.

7.  Greater Bay Bancorp is a Super Community Bank with affiliate banks located throughout the Bay Area, operating under the Greater Bay Bancorp holding company umbrella, using their own names.

8.  Greater Bay Trust Company, a division of Greater Bay Bancorp, provides the fiduciary and investment management services for all the affiliate banks' clients and other clients who do not necessarily maintain a banking relationship with any of the affiliate banks. There are 3 physical locations for Greater Bay Trust Company: 2 in Palo Alto and 1 in Santa Clara.

9.  Greater Bay Trust Company has approximately $660 million in clients' assets under its custody.

10. Greater Bay Trust Company is not audited by an independent outside auditor. It is however, presumably subject to audits by the Office of the Comptroller of the Currency.

11. Cheryl E. Howell is an Executive Vice President of Greater Bay Bancorp and the head of the Greater Bay Trust Company.

12. Krystyna Marciniak is Vice President of Operations and Compliance Officer of the Greater Bay Trust Company.

13. Cathleen Colgan was Vice President and Senior Trust Officer responsible for the administration of Personal Trust accounts, Charitable and Non-Profit accounts at the Greater Bay Trust Company.

14. Eric Lee is a Trust Administrative assistant at the Greater Bay Trust Company. He reported to Cathleen Colgan and assisted both Cathleen Colgan and Gerard Chang.

15. In connection with 18 USC Section US PATRIOT Act, Greater Bay Bancorp and the Greater Bay Trust Company had to implement and comply with stringent procedures required by the Act.

16. Plaintiff resigned from his job with the Greater Bay Trust Company on 1/26/05 on grounds that he was being asked to perform acts that contravene Banking Regulations and US PATRIOT Act.

17. Defendant later refused Plaintiff claims for Unemployment Insurance benefits and also refused to pay Plaintiff's Bonus.

18. Plaintiff filed complaints with the California Unemployment Insurance Appeals Board and with the State of California Labor Commissioner. Both agencies have denied Plaintiff's rights. There are no remedies available to Plaintiff from either of these two agencies.

19. **First Count: Breach of Fiduciary Duty.** Defendant Cathleen Colgan failed to properly address and discipline egregious performance issues affecting fiduciary accounts with Defendant Cheryl Howell.

20. **Second Count: Breach of Fiduciary Duty.** Defendant Cheryl Howell failed to act in her capacity as head of the Trust Company in addressing performance issues.

21. **Third Count: Breach of Fiduciary Duty.** Defendant Cathleen Colgan resigned from her job which led to Cheryl Howell's assignment of personal trust accounts, charitable accounts and non-profit accounts to Plaintiff.

22. **Fourth Count: Breach of Fiduciary Duty.** Defendant Cheryl Howell failed to properly assign these accounts to other trust administrators in the Greater Bay Trust Company who have the relevant experience to administer such accounts in accordance with Banking regulations and US PATRIOT Act regulations.

23. **Fifth Count: Breach of Fiduciary Duty.** Defendant Cheryl Howell failed to provide any program or tools to transition those accounts to Plaintiff despite his complete lack of knowledge and lack of support from an experienced personal trust administrator.

24. **Sixth Count: Breach of Fiduciary Duty.** Defendant Cheryl Howell failed to address the situation by assigning the personal, charitable and non-profit accounts to an experienced personal trust administrator employed by the Greater Bay Trust Company.

25. **Seventh Count: Breach of Fiduciary Duty.** Defendant Cheryl Howell failed to address the performance issues involving defendant Eric Lee who was expected to support Plaintiff in the administration of the clients' accounts.

26. **Eighth Count: Breach of Fiduciary Duty.** Defendant Krystyna Marciniak failed to act in her capacity as Compliance Officer to prevent the lapse in regulations and sound business principles.

27. **Ninth Count: Violation of US PATRIOT Act.** Defendant Cheryl Howell assigned accounts to Plaintiff which he had no professional experience with and could not therefore, appropriately monitor for possible violations of the US PATRIOT Act.

28. **Tenth Count: Violation of US PATRIOT Act.** Defendant Cheryl Howell deliberately assigned accounts to Plaintiff despite the fact that she had other personal trust administrator to whom she could have assigned such accounts.

29. **Eleventh Count: Violation of Fair Labor Standards.** Defendants violated Plaintiff's rights by forcing him into a situation that he had no other choice to but to resign.

30. **Twelfth Count: Violation of Fair Labor Standards.** Defendants' failed to address the violations and offer Plaintiff his job back, performing duties with which he was professionally trained to handle.

31. **Thirteenth Count: Violation of Fair Labor Standards.** Defendants failure to act created a hostile work environment for the Plaintiff.

32. **Fourteenth Count: Violation of Civil Rights. 42 USC Section 1981.** Defendants acted in retaliatory manner when they denied Plaintiff's right to collect unemployment insurance benefits.

33. **Fifteenth Count: Violation of Civil Rights. 42 USC Section 1981.** Defendants acted in retaliatory manner when they denied Plaintiff's right to his bonus payment.

34. **Sixteenth Count: Violation of Civil Rights. 42 USC Section 1981.** Defendants purposely failed to correct the violations and offer Plaintiff his job back.

35. Plaintiff requests a Jury Trial.

36. Wherefore, Plaintiff prays for:

37. Order from the Court barring Greater Bay Bancorp from engaging in such actions that contravene laws of the United States and as well as the public's best interest.

38. Order from the Court mandating the reinstatement of Plaintiff's job with seniority and benefits and within the scope of his experience.

39. The Court order Greater Bay Bancorp to pay Plaintiff loss of wages sustained to date and bonus with interest.

40. The Court order Greater Bay Bancorp to pay Plaintiff punitive damages in the amount of $2,000,000.00 for their egregious actions.

41. Cost of lawsuit.

42. Such and other relief as the Court deems just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 13, 2005

_____
Gerard Chang, Plaintiff

Exhibit "6"



San Francisco Superior Courts
Information Technology Group

## Document Scanning Lead Sheet

Jan-09-2006 1:18 pm

Case Number: CGC-06-448410

Filing Date: Jan-09-2006 1:14

Juke Box: 001    Image: 01359721

COMPLAINT

GERALD CHANG VS. GOLDSTEIN,GELLMAN,MELBOSTAD,GIBSON & HARRIS,LLP et

001C01359721

**Instructions:**
Please place this sheet on top of the document to be scanned.

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**

GOLDSTEIN, GELLMAN, MELBOSTAD, GIBSON &
HARRIS LLC
JEFFREY G. GIBSON,
AND DOES 1 TO 25
**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

GERARD CHANG

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case.  There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.  Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte.  Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca.  Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*
*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is: SAN FRANCISCO SUPERIOR COURT<br>(El nombre y dirección de la corte es): 400 McALLISTER STREET<br>SAN FRANCISCO, CA 94102 | CASE NUMBER:<br>(Número del Caso): CGC 05-448410 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
GERARD CHANG, IN PRO PER
586 SANCHEZ STREET
SAN FRANCISCO, CA 94114  TEL. 415.252. ____

GORDON PARK-LI

DATE:
(Fecha) 1/9/06

Clerk, by
(Secretario)  CRISTINA E. BAUTISTA

, Deputy
(Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

**FILED**
San Francisco County Superior Court

JAN 9 - 2006

**GORDON PARK-LI, Clerk**
BY: _____
Deputy Clerk

CASE MANAGEMENT CONFERENCE SET

Gerard Chang
In Pro Per
586 Sanchez Street, San Francisco, CA 94114
Tel.: 415-252-8318

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO    JUN 9   2006 9   00 AM

UNLIMITED JURISDICTION    DEPARTMENT 212

**SUMMONS ISSUED**

| | |
|---|---|
| GERARD CHANG, | ) Case No. **CGC-05-44841 0** |
| | ) |
| Plaintiff, | ) **COMPLAINT: LEGAL MALPRACTICE,** |
| | ) **GROSS NEGLIGENCE, EXTRINSIC AND** |
| v. | ) **INTRINSIC FRAUD, EXCESSIVE FEES,** |
| | ) **FAILURE TO ACT TO MITIGATE DAMAGES,** |
| GOLDSTEIN, GELLMAN, MELBOSTAD, | ) **INFLICTION OF EMOTIONAL PAIN AND** |
| GIBSON & HARRIS, LLP | ) **SUFFERING, INDUCEMENT OF FRAUD** |
| JEFFREY G. GIBSON, | ) **PRESENT AND FUTURE ECONOMIC** |
| and Does 1-25, | ) **DAMAGES** |
| | ) |
| Defendants | ) |

## GENERAL ALLEGATIONS

1. Plaintiff, Gerard Chang, purchased 584-586-588 Sanchez Street on or about June 1999 with his brother William Chang. The investment was for 70% ownership by Plaintiff and 30% ownership by William Chang. No written agreements were drafted at the time and the transaction was made as a quite loose verbal agreement between Gerard and William Chang that they would share all benefits and liabilities based upon their pro-rata share.

2. The Grant Deed to the property shows the ownership of the property as Gerard Chang 70% undivided interest and William Chang 30% undivided interest as Tenants in Common.

3. Plaintiff lives in unit 586 Sanchez Street. William Chang has never lived in any of the units and continues to maintain separate living quarters in San Francisco.

4. Plaintiff had tenants renting from him units 584 Sanchez Street and 588 Sanchez Street.

5. On or about 12/16/02 William Chang brought on legal action against Plaintiff making numerous false allegations.

6. At that time, Plaintiff sought out the best legal defense he could obtain. Plaintiff was personally referred to Jeffrey G. Gibson, a partner at Goldstein, Gellman, Melbostad, Gibson and Harris by Elizabeth "Liz" T. Erhardt, a Senior Associate of the firm who specialized in real estate transactions. Ms. Erhardt was considered a friend of Plaintiff's at the time. Ms. Erhardt assured Plaintiff that Mr.

Gerard Chang v. Goldstein, Gellman, Melbostad, Gibson, and Harris, Jeffrey G. Gibson, et al.
**Complaint: Legal Malpractice, Gross Negligence, Fraud, Excessive Fees, Failure to Mitigate Damages,**
Emotional Pain and Suffering, Inducement of Fraud, Present and Future Economic Damages.
Page 1 of 7

Gibson was the very best for the defense of his case. Based upon this professional advice, Plaintiff made the decision to hire Goldstein, Gellman, Melbostad, Gibson and Harris to take on the case.

7. Plaintiff met with Mr. Gibson and Elizabeth T. Erhardt in their offices shortly after the lawsuit was filed by William Chang. After explaining and giving them every detail of the situation, Mr. Gibson accepted to take on the case and a retainer was subsequently paid by Plaintiff for the legal engagement.

8. Mr. Gibson personally handled the defense of the case and also of the drafting of a Settlement Agreement and Tenancy In Common Agreement in connection with the defense and settlement of the lawsuit brought on by Mr. William Chang.

9. Said Tenancy In Common Agreement has been called as fraudulent and invalid by Plaintiff in response to civil action CGC 05 443288 filed by William Chang on July 21, 2005.

10. Said Tenancy In Common Agreement was allegedly signed by Plaintiff and William Chang on or about 10/2/03.

11. The lawsuit brought on by William Chang against Plaintiff was in accordance with CA Superior Court, San Francisco's records on file, dismissed on or about 3/9/04 by Judge Arlene T. Borick.

12. On or about February 2005, Plaintiff brought up tenancy issues to the attention of the tenants in both 584 Sanchez Street (Michael J. Lynch and Than Tran) and 588 Sanchez Street (Mark Buhler and wife Anne Marie Despain.)

13. Rather than address the issues with their landlord, Plaintiff Gerard Chang, tenants somehow miraculously got a hold of William Chang whom they 'discovered' was a part owner of the property. Plaintiff is at a loss to this date, as to why the tenants chose this tactic. Tenants allegedly asked William Chang to speak to Plaintiff about the tenancy issues brought up by Plaintiff.

14. Tenants had never had contact with William Chang and their leases had been entered into with Plaintiff not William Chang. Further, these tenants had been living in their respective units for several years.

15. William Chang contacted Plaintiff on or about that same month of February 2005. Plaintiff explained the tenancy issues and William Chang assured Plaintiff that he wanted to help clear the situation and was going to help out.

16. Rather than help with the tenancy issues at hand, William Chang in bad faith and in contravention of his verbal agreement of non-interference with Plaintiff, issued a statement dated 2/28/05 demanding that rents for both 584 and 588 Sanchez be henceforth, paid to him. This statement was given to the tenants of the units and a copy given to Plaintiff.

17. Plaintiff immediately notified William Chang that this was a violation of their discussion and an underhanded maneuver with clear malicious intent on his part. Plaintiff warned William Chang that by his actions he was willingly placing the tenants in harm's way and involving them in a legal battle in which the tenants should have no part.

18. Plaintiff demanded that William Chang rescind the statement or risk legal action being brought against him and the tenants as well.

Gerard Chang v. Goldstein, Gellman, Melbostad, Gibson, and Harris, Jeffrey G. Gibson, et al.
Complaint; Legal Malpractice, Gross Negligence, Fraud, Excessive Fees, Failure to Mitigate Damages, Emotional Pain and Suffering, Inducement of Fraud, Present and Future Economic Damages.

19. William Chang refused to rescind the statement and the tenants illegally pay the March 2005 rent to William Chang. Their lease agreements provided for payment to Plaintiff only and Plaintiff never authorized that rent payments be made to William Chang or anyone else for that matter.

20. Plaintiff contacted the tenants for a meeting to discuss the situation on or about early March 2005 in an effort to stop and mitigate the damages inflicted upon him thus far. Tenants agree to a meeting with William Chang to be present.

21. At said meeting, present were: tenants Michael J. Lynch and Than Tran of 584 Sanchez; Mark Buhler and wife, Anne Marie Despain of 588 Sanchez; William Chang and Plaintiff. Said meeting took place at Plaintiff's home, 586 Sanchez Street.

22. At said meeting, Plaintiff told the tenants and William Chang in no uncertain terms, that William Chang was pulling an illegal maneuver and that the tenants were to stay out of it, seek legal advice, and continue to honor their lease agreements they had entered into with Plaintiff. Plaintiff made it unambiguously clear that he would bring legal action against them all if they were to continue to violate the terms of their lease agreements while relying on a document that Plaintiff was going to legally challenge. Plaintiff told them to stay out of an ongoing family dispute.

23. Tenancy issues were also discussed and tenants gave Plaintiff assurance that they would be addressed. Mr. Mark Buhler and wife, Anne Marie Despain took care of the issues that had been raised by Plaintiff and resumed paying the rent to Plaintiff. Mr. Buhler and wife told Plaintiff that they never recovered the March 2005 rent from William Chang despite their having requested it.

24. Tenants Michael J. Lynch and Than Tran reneged on their word to resume paying the rent to Plaintiff and to address the tenancy issues. They advised Plaintiff that William Chang and his legal counsel, Andrew Zacks of Zacks, Utrecht and Leadbetter, P.C. had directed them to do so.

25. Once tenants Michael J. Lynch and Than Tran knew Plaintiff was going to bring an unlawful detainer action against them, they engaged on a campaign designed to give them a bogus basis for a wrongful eviction cross-complaint case which is in the court's docket No. CUD 05 614414.

26. The primary law firm responsible for advising tenants Michael J. Lynch, Than Tran and William Chang with their tortious course of action is Zacks, Utrecht and Leadbetter, PC. The lawyers that have surfaced thus far in connection with this and other related legal actions are Andrew Zacks and Eric McFarland.

27. On or about the end of April 2005, Plaintiff met personally with attorney and partner at Goldstein, Gellman, Melbostad, Gibson and Harris, Jeffrey G. Gibson. At said meeting, Plaintiff asked Mr. Gibson to please explain to him how on earth his brother William Chang was getting away with the stunt he was pulling. Mr. Gibson could not and did not defend the quality of his work other than to say "…Well, you signed the TIC Agreement, didn't you?" Such chicken-shit remark was not expected by Plaintiff much less the lack of professionalism in that Mr. Gibson did not even bother to address Plaintiff's legal questions pertaining to the work that had been performed by Mr. Gibson and the firm. And, for which they got paid all of the hours for which they very happily billed. Plaintiff got a first-hand lesson of why it is the law profession suffers from such a bad stigma.

28. Plaintiff was forced to pursue legal action as he had warned. He also knew at this point, that legal action against the lawyers who had represented him was necessary in order to get legal remedy and to

Gerard Chang v. Goldstein, Gellman, Melbostad, Gibson, and Harris, Jeffrey G. Gibson, et al.
Complaint: Legal Malpractice, Gross Negligence, Fraud, Excessive Fees, Failure to Mitigate Damages, Emotional Pain and Suffering, Inducement of Fraud, Present and Future Economic Damages.
Page 3 of 7

protect his rights in his investment. Plaintiff filed an unlawful detainer action against tenants Michael J. Lynch and Than Tran on May 31, 2005 No. CUD 05 614414.

29. Tenants Michael J. Lynch and Than Tran with the help of their attorney Andrew E. Westley managed to persuade Judge Peter J. Busch, Dept. 210, to convert the unlawful detainer case filed by Plaintiff to a civil case, and to allow them to file a cross-complaint. This decision by Judge Peter J. Busch was rendered over Plaintiff's legal objections and, despite the fact that the tenants never surrendered the unit to Plaintiff. Judge Busch's decision has allowed this bogus lawsuit to continue and to make a mockery of the judicial system.

30. Plaintiff has sustained and continues to sustain economic damages because of the tortious actions committed by William Chang, Michael J. Lynch and Than Tran among others. This situation was directly aided by Judge Peter J. Busch's decision.

31. Plaintiff believes that tenants Mark Buhler and wife, Anne Marie Despain decided to vacate the premises at 588 Sanchez Street because of the clear intent on Plaintiff's part to enforce all of his rights under applicable laws. Plaintiff also believes that these former tenants may have willingly or unwittingly contributed to the damages being sustained by Plaintiff. Perhaps this was done in an effort to create pressure on Plaintiff since he was going to have to deal with yet another vacant unit; hence, more immediate and future economic losses for Plaintiff.

32. William Chang filed a civil action No. CGC 05 443288 on July 21, 2005 to which Plaintiff has answered and stated the fraudulent nature of the TIC Agreement. Plaintiff named Jeffrey G. Gibson, Elizabeth "Liz" Erhardt, Goldstein, Gellman, Melbostad, Gibson and Harris and other parties as cross-complainant-defendants.

33. William Chang, with the advice of Zacks, Utrecht and Leadbetter PC is also engaged in bad-faith legal tactics and maneuvers. William Chang filed an unlawful detainer action CUD 05 615866 to bombard Plaintiff with so much legal action that his rights to sue for damages can be forfeited by his missing of a key statutory or administrative deadline. Plaintiff has sought out to hire legal help for this legal action and not a single law firm or lawyer has been willing to take on the case. What respect can the law profession receive from the people when they are incapable and unwilling to go after their own who fail to live up to their own code of ethics and conduct? Never mind when they fail miserably to do the job for which they are paid.

34. At a hearing in Judge Ronald E. Quidachay, Dept. 302 on December 19, 2005, case No. CGC CUD 05-443288 Judge Quidachay told Plaintiff "...Get Legal Help." His Honor seemed incredibly ignorant of how his statement was not only -hopefully unintentionally- condescending but hollow since Plaintiff has indeed tried to get legal help and has been unable to get it. His Honor may have come short of stating that without a lawyer, the people shall have no chance at justice in this country or perhaps only in his court.

35. It appears as of the date of writing of this complaint, that Judge Quidachay did not abuse the discretion of the court by granting the motion for Preliminary Injunction and Temporary Restraining Order heard in his chambers on December 19, 2005.

36. Since the cross-complainants have not answered in hopes of gaining an upper hand in the situation, or perhaps in the hopes of covering for their illegal actions, Plaintiff is filing this action and naming the parties with most visibility and the top of the chain of parties known or suspected to have had a hand in the 'collaboration' that culminated with the fraudulent and legally-disputed TIC Agreement.

Gerard Chang v. Goldstein, Gellman, Melbostad, Gibson, and Harris, Jeffrey G. Gibson, et al.
Complaint: Legal Malpractice, Gross Negligence, Fraud, Excessive Fees, Failure to Mitigate Damages, Emotional Pain and Suffering, Inducement of Fraud, Present and Future Economic Damages.
Page 4 of 7

## FIRST CAUSE OF ACTION
## LEGAL MALPRACTICE, GROSS NEGLIGENCE, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT

37. Defendants failed to do due diligence by not hiring real estate professionals to perform requisite calculations in making the determination of the allocation of William Chang's 30% undivided interest to 584 Sanchez Street which is one-half of the building in which Plaintiff lives.

## SECOND CAUSE OF ACTION
## LEGAL MALPRACTICE, GROSS NEGLIGENCE, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT

38. Plaintiff received no consideration whatsoever for presumably allowing William Chang to take ownership of 584 Sanchez Street when his interest was only 30%. Defendants never bother to discuss this with Plaintiff even though they drafted the TIC Agreement.

## THIRD CAUSE OF ACTION
## LEGAL MALPRACTICE, GROSS NEGLIGENCE, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT

39. Defendants never performed or hired any real estate professionals to do calculations on rents being paid and that could be paid for all units in order to determine the appropriate pro-rate share of income and expenses for inclusion in the legally-disputed TIC Agreement.

## FOURTH CAUSE OF ACTION
## LEGAL MALPRACTICE, GROSS NEGLIGENCE, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT

40. Defendants failed to perform their job by being conveniently absent completely from the discussions between William Chang and Gerard Chang with respect to the Settlement Agreement and TIC Agreement. Defendants were not hired to simply have their name on the papers filed with the Court and for them to bill for simply filing motions and papers. They were hired for among other things: their legal expertise, legal advice, legal representation, legal defense, and to act in a fiduciary capacity. They were expected to uphold the highest standard of care in the handling of the case.

## FIFTH CAUSE OF ACTION
## EXTRINSIC AND INTRINSIC FRAUD, INDUCEMENT OF FRAUD

41. Defendants were parties to the inducement of fraud by failing to review, discuss and advice every detail of the TIC Agreement being signed, exactly as a lawyer is hired to do with a prenuptial agreement to ensure that the client has a thorough and unequivocal understanding of the contract and in particular, of any consideration being either given up, or being received in connection with said agreement or contract.

## SIXTH CAUSE OF ACTION
## EXCESSIVE FEES

42. Defendants charged excessive fees as they knowingly billed and charged Plaintiff for administrative charges disguised as fees for legal advice and services when that is not what was ultimately rendered.

Gerard Chang v. Goldstein, Gellman, Melbostad, Gibson, and Harris, Jeffrey G. Gibson, et al.
Complaint: Legal Malpractice, Gross Negligence, Fraud, Excessive Fees, Failure to Mitigate Damages,
Emotional Pain and Suffering, Inducement of Fraud, Present and Future Economic Damages.

## SEVENTH CAUSE OF ACTION
## FAILURE TO MITIGATE DAMAGES, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

43. Defendants are directly responsible for present and future economic damages being sustained by Plaintiff in the way of loss of rental income (approximately $3,800.00 a month), legal costs, as well as intentional emotional distress. Defendant Jeffrey G. Gibson met with Plaintiff on or about late April of 2005 and chose to tell Plaintiff to essentially take a hike.

## EIGHTH CAUSE OF ACTION
## FAILURE TO MITIGATE DAMAGES, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

44. Defendants' failure to act is causing Plaintiff to accrue and continue to accrue a liability against him as William Chang is now asserting that he is solely paying for the mortgage on the property. This is a real and tangible economic loss to the Plaintiff for which the Defendants are directly responsible and accountable.

## NINTH CAUSE OF ACTION
## EXTRINSIC AND INTRINSIC FRAUD, INDUCEMENT OF FRAUD

45. Defendants are willing or unwitting parties to the inducement of fraud by allowing William Chang to not enforce his presumable right to 584 Sanchez until the statute of limitation on legal malpractice had run out so that Plaintiff would be without legal recourse. Said Agreement was allegedly signed on or about October 2, 2003.

## TENTH CAUSE OF ACTION
## EXTRINSIC AND INTRINSIC FRAUD, INDUCEMENT OF FRAUD

46. Defendants are willing or unwitting parties to the inducement of fraud by allowing William Chang to not dismiss his legal action until Plaintiff had allegedly signed the TIC Agreement without the requisite legal advice and expertise that Plaintiff hired the Defendants to do on his behalf. Said action was in accordance with CA Superior Court San Francisco's records, dismissed on or about March 9, 2004. The TIC Agreement was allegedly signed on or about October 2, 2003.

## ELEVENTH CAUSE OF ACTION
## PRESENT AND FUTURE ECONOMIC DAMAGES

47. Defendants are directly accountable and responsible for the loss of rental income at the monthly rate of $3,800.00; loss of equity to be determined at trial, downward fluctuation of rental rates (rental rates are presumably lower than they were when tenants signed their lease agreements with Plaintiff); downward fluctuations of real estate market values; and legal costs of this and all related legal actions.

## TWELFTH CAUSE OF ACTION
## TORTIOUS AND MALICIOUS INTENT TO CAUSE HARM

48. Defendants and Elizabeth T. Erhardt are responsible of tortious and malicious intent to harm Plaintiff. Plaintiff made attempts to have them rectify the situation and they have not done a darn thing to try and help Plaintiff. Defendants have stood idly by while allowing Plaintiff to be played with by lawyers

Gerard Chang v. Goldstein, Gellman, Melbostad, Gibson, and Harris, Jeffrey G. Gibson, et al.
Complaint: Legal Malpractice, Gross Negligence, Fraud, Excessive Fees, Failure to Mitigate Damages,
Emotional Pain and Suffering, Inducement of Fraud, Present and Future Economic Damages.
Page 6 of 7

interested in collecting fees from William Chang for as long as it takes and perhaps until such time as the entire equity in Plaintiff's property is depleted and he then starts running into negative equity. They are allowing the 'bleeding' to go on unfettered. Are these lawyers to be congratulated for a job well done? Disbarment seems like a more appropriate action.

WHEREFORE, Plaintiff prays for judgment against defendants and each of them as follows:

49. A judicial declaration is therefore necessary and appropriate at this time under the circumstances in order for Plaintiff to ascertain his rights to be indemnified for the defendants' actions; William Chang's actions, and any and all other involved parties' actions once they are found to be actionable under the law.

50. For Judgment ordering the hiring of true and experienced professionals to examine the facts and circumstances and do the job the Defendants were hired for paid to do back in or about the end of 2002.

51. For Judgment ordering the hiring of true and experienced professionals to submit professional computations of allocation of tenancy-in-common shares and of pro-rata share of income and expenses as well as sharing in the equity appreciation or depreciation in real estate value.

52. For loss of income at the monthly rate of $3,800.00 for March 2005; monthly rate of $2,000.00 from April 2005; monthly rate of $3,800.00 from August 2005.

53. For loss of equity in property as determined by expert and true real estate professionals ordered by the Court to perform the valuation at the time of trial or judgment.

54. For punitive damages in the amount of $1,000,000.00 to show that lawyers are not free to perform duties for which they are licensed by the State without a reasonable expectation by the people that they are to fulfill their obligations promised to clients they agree to represent in legal actions. Lawyers should not behave nor be allowed by the Courts to behave as only crooks and felons do. The clear tortious and malicious intent on the Defendants' part and any other parties involved, is deserving of this or an even higher amount.

55. For cost of this and all other related lawsuits; and for such other and further relief as the Court knows to exist and deems just and proper.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: January 9, 2006                              _____

                                                    Gerard Chang, Plaintiff

Gerard Chang v. Goldstein, Gellman, Melbostad, Gibson, and Harris, Jeffrey G. Gibson, et al.
Complaint: Legal Malpractice, Gross Negligence, Fraud, Excessive Fees, Failure to Mitigate Damages,
Emotional Pain and Suffering, Inducement of Fraud, Present and Future Economic Damages.
Page 7 of 7