IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GERARDO B. CHANG,

    Plaintiff,

v.

CITIGROUP INC., et al.

    Defendant.

        No. C 09-02966 SI

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

    Defendants' motion to dismiss was scheduled for oral argument on January 22, 2010. At argument, both parties rested on their papers. Having considered the papers submitted and for good cause shown, the Court hereby GRANTS defendants' motion to dismiss plaintiff's amended complaint with prejudice on statute of limitations grounds.

**BACKGROUND**

    Pro se plaintiff Gerardo Chang filed suit in this Court on July 1, 2009, alleging fraud under the Investment Advisers Act and state law claims for breach of contract, fraud, professional negligence, and breach of fiduciary duty stemming from losses sustained to an individual retirement account ("IRA") opened with defendants in 2000. Am. Compl. ¶¶ 10, 89-117. Defendants moved to dismiss the complaint. By order dated October 16, 2009, the Court granted the motion with leave to amend as to the breach of contract, fraud, negligence and breach of fiduciary duty claims. Plaintiff amended his complaint to include allegedly fraudulent statements made by defendant which give rise to his claim. While the amended complaint recounts the exchanges between plaintiff and his financial advisors with more particularity than the original complaint, none of the additional facts alleged provides a legal basis

**United States District Court**
For the Northern District of California

for tolling the statute of limitations on plaintiff's claims. Accordingly, defendants move to dismiss on statute of limitations grounds.

Prior to 2000, plaintiff was employed by Charles Schwab & Co., Inc. ("Schwab") as a senior manager responsible for the administration of employee-benefit trust accounts. Amended Compl. ¶¶ 4-5. When plaintiff's employment with Schwab ended in early 2000, he received a distribution from his 401(k) and employee profit-sharing plan which consisted of cash and shares of Schwab common stock. *Id.* ¶ 6. Plaintiff opened a Smith Barney IRA in April 2000 with the assets realized from the distribution of his Schwab employee accounts. *Id.* ¶ 7. Between 2000 and 2001, a variety of securities were purchased for the account in order to diversify the account's holdings. Copy of Claimant's Response to Respondent's Motion to Dismiss FINRA Arbitration attached to Complaint as Exhibit "A," pg. 34, 35 ("FINRA Response"). According to the complaint, the last security purchased in connection with the account occurred in February 2002, but the majority of purchases were made from 2000-01. Am. Compl. ¶ 36; Securities Report, ex. A to Am. Compl., at 21.

Plaintiff was aware of a precipitous decline in value of his securities investment account from the "very outset," but alleges that fraudulent statements made by the defendants did not raise his suspicion of fraud at that time and he was "quite confident that a competent job in investment manager/advisor capacity was being carried out with respect to his retirement nest egg." Am. Compl. ¶ 20. Instead, plaintiff claims that he "became aware that something had gone terrible awry with his retirement nest egg, or that fraud had been perpetrated" in early 2005. *Id.* at ¶ 61. Once "aware" of the possible fraud, plaintiff wrote to defendants on February 23, 2005, expressing dissatisfaction with the performance of his retirement account. *Id.* ¶¶ 60-61; FINRA Response at 34. Defendants responded in writing on April 29, 2005. FINRA Response at 34-36. Plaintiff argues that this 2005 correspondence should be used by the Court for the purposes of establishing a time line for his claims under state and federal law. *Id.* ¶¶ 60, 65.

The letter from April 29, 2005 indicates that Donald Kelley, Vice President of Smith Barney's Legal Department-Early Dispute Resolution Group, conducted an investigation regarding plaintiff's written complaint, and determined that the losses were either attributable to plaintiff's large holdings in Schwab or, with respect to losses sustained as a result of stocks purchased by defendants, consistent

2

with plaintiff's stated risk profile. FINRA Response at 34-35. Unsatisfied with this explanation, and after more correspondence with defendants, plaintiff ultimately filed an arbitration claim in June 2008 with the Financial Industry Regulatory Authority ("FINRA"), the mandatory arbitral panel named in plaintiffs' Client Agreement with defendants. Am. Compl. ¶ 79. In May 2009, the FINRA panel dismissed plaintiff's claims as time-barred. According to defendants, "Although not specifically referred to in the FINRA Dispute Resolution Order, the arbitration panel's ruling was presumably based on FINRA Rule 122206(a), which states that '[n]o claim shall be eligible for submission to arbitration under the Code where six years have elapsed from the occurrence or event giving rise to the claims.'" Mot. to Dismiss at 5 fn. 2; *see also* FINRA Dispute Resolution Order, ex. A to Am. Compl., at 17-18.

In opposing the dismissal of his arbitration claim and in opposition to defendants' current motion, plaintiff raises two defenses: mental illness and other extraordinary circumstances. First, plaintiff contends that two "medical emergencies" or "mental breakdowns" in 2002 and 2005, caused by Bipolar Disorder, left him unable to "pursue the matter with [defendants] intelligently, knowingly, and competently at that time." Am. Compl. ¶¶ 59, 75-76. In support of this allegation, plaintiff attaches to his complaint a letter from the San Francisco Department of Public Health describing his mental health history and symptoms. *See* Public Health Letter, ex. A to Am. Compl., at 20. The letter states that plaintiff had "functional limitations in 2005, preventing him from working in a full-time capacity" and that, in the period from 2003 to 2007, plaintiff "[was] disabled and suffered severe functional impairments when he was not getting much needed psychiatric treatment." *Id.* The letter also indicates that plaintiff resumed psychiatric treatment on April 20, 2007 and continues to receive bi-weekly psychotherapy and bi-monthly medication management. *Id.* Plaintiff asserts that once this psychiatric treatment resumed he became able to pursue the matter with defendants. Am. Compl. ¶ 77.

Second, plaintiff identifies at least six other legal disputes in which he was involved from May 31, 2005 onward. *Id.* ¶ 75. Plaintiff points to these other matters as "extraordinary circumstances" which prevented him from pursuing the instant claim in a timely fashion. *Id.* ¶76.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it

3

fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court must assume all allegations are true and draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

Pro se complaints are held to less rigorous standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam). The court has an obligation to construe pro se pleadings liberally and to afford the plaintiff the benefit of any doubt. *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted). Dismissal of a pro se complaint without leave to amend is proper only if it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (quoting *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)).

Although a Rule 12(b)(6) motion usually is not available to raise an affirmative defense, it may be used when the complaint contains allegations showing a complete defense or bar to recovery, such as a statute of limitations problem. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). Dismissal on statute of limitations grounds can be granted pursuant to Rule 12(b)(6) "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Id.*

# DISCUSSION

## I. Applicable Statutes of Limitations

The issue presented in this case is whether, based on the facts alleged in plaintiff's complaint, he is time-barred from pursing his causes of action. The statutes of limitations for plaintiff's claims are as follows: for fraud under the Investment Advisors Act, two years from discovery but no more than five years from the violation (28 U.S.C. § 1658(b)(1-2)); for breach of contract, four years (Cal. Civ. Proc. Code §337); for fraudulent concealment, three years from discovery (Cal. Civ. Proc. Code §338(d)); for professional negligence, two years (Cal. Civ. Proc. Code §339); and for breach of fiduciary duty, four years (Cal. Civ. Proc. Code §343).

It is plaintiff's burden to plead facts that will support a finding that the action was filed within the limitations period for each claim. The facts alleged in the amended complaint would support an accrual date as early as February 11, 2002, when the last securities purchase was made. The latest possible accrual date would be April 29, 2005, when defendants wrote a letter summarizing the reasons for the losses to plaintiff's investment account. Because plaintiff's complaint was not filed until July 1, 2009, over four years after the latest possible accrual date, each of his claims would be barred by the applicable statute of limitations, absent some form of equitable tolling.

## II. Equitable Tolling

Section 352 of the California Code of Civil Procedure provides that equitable tolling may be available for plaintiff's state law claims, if factually supported. In the Ninth Circuit, the doctrine of equitable tolling operates as follows:

> Equitable tolling focuses primarily on the plaintiff's excusable ignorance of the limitations period. The doctrine applies in situations where, despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim, or where the party invoking the doctrine has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. The doctrine is not available to avoid the consequence of one's own negligence, when a late filing is due to claimant's failure to exercise due diligence in preserving his legal rights.

*Hensley v. United States*, 531 F.3d 1052, 1057-58 (9th Cir. 2008) (internal quotation marks, alterations and citations omitted). The plaintiff must show that he could not "obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant." *Garcia v.*

*Brockway*, 526 F.3d 456, 465 (9th Cir. 2008) (en banc) (citation omitted). In the Ninth Circuit, equitable tolling may apply if the plaintiff is mentally incompetent. *See Brockamp v. United States*, 67 F.3d 260, 263 (9th Cir. 1995), rev'd on other grounds, 519 U.S. 347 (1977). When a statute of limitations is tolled, the days during a tolled period are not counted against the limitations period. *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1195 (9th Cir. 2001) (en banc). That is, the clock is stopped until a later event permits it to resume running. *Id.*

### A. State Law Claims

Drawing every possible inference in plaintiff's favor, a trier of fact could conclude that plaintiff had some mental impairment between January 2003 and April 2007. By plaintiff's own admission, however, he has been involved in numerous other legal battles unrelated to the present dispute, starting in 2005. These matters include numerous state court cases, the earliest of which, *Chang v. Lynch*, No. CUD-05-614414, was filed on May 31, 2005, as well as a number of federal cases: *Chang v. Greater Bay Bancorp*, No. 05-5166 CW; *Chang v. Greater Bay Bank*, No. 07-2437 CW; *Chang v. Goldstein Gellman Melbostad Gibson & Harris LLP*, No. 07-2512 MJJ; *Chang v. Greater Bay Bank*, No. 07-3334 CW; *Chang v. Wells Fargo and Company*, No. 09-216 CW; *Chang v. The California State University, San Francisco State University*, No. 09-1607 MCC.

Plaintiff himself instituted all of the federal cases and many of the state cases. With only one exception of which this Court is aware, plaintiff has prosecuted these cases actively.[1] Indeed, in two of the federal cases resolved against plaintiff at the district court level,[2] plaintiff filed appeals to the Ninth Circuit. In the Court's view, plaintiff's active involvement in these other legal matters demonstrates that his mental impairment has not prevented him from exercising his legal rights, and does not provide a basis for tolling the statute of limitations in this case. *Cf. Braham v. State Ins. Fund*, No. 97-7121, 1999 WL 14011, at *4 (S.D.N.Y. Jan. 14, 1999) (although "[i]llness may be an exceptional

---

[1] Plaintiff's complaint in *Chang v. Greater Bay Bank, et al.*, No. 07-2437 CW, was dismissed without prejudice for failure to prosecute.

[2] *Chang v. Greater Bay Bancorp, et al.*, No. 05-5166 CW; and *Chang v. Greater Bay Bank, et al.*, No. 07-3334 CW.

circumstance [warranting equitable tolling] when it has prevented the party from pursuing her legal rights," filing another lawsuit during the period of alleged incapacity demonstrates the ability to pursue legal rights).[3]

The earliest date plaintiff was involved in a legal matter was May 31, 2005, the day he filed his state court complaint in *Chang v. Lynch*. Therefore, any tolling can only run until that date. Using the latest possible claim accrual date of April 29, 2005, tolling is limited to the 32-day period from April 29, 2005 until May 31, 2005. Applying 32 days of tolling, and using the most generous four-year statute of limitations, plaintiff was required to bring his claims no later than June 3, 2009. Plaintiff filed his claim on July 1, 2009. Consequently, no set of facts can bring any of plaintiff's state law claims within the statutory period and these claims must be DISMISSED with prejudice.

### B. Federal Law Claims

Plaintiff attempts to state a claim of fraud arising under the Investment Advisers Act of 1940 ("Investment Advisers Act"), 15 U.S.C. § 80b-1 et seq. The statute of limitations for claims under the Investment Advisers Act is two years from discovery of the violation, but in no event later than five years from the violation itself. 28 U.S.C. § 1658 (b)(1). "The two-year statute of limitations is not subject to equitable tolling. The five-year outer limitations period . . . serves as a statute of repose in lieu of equitable tolling." *In re Maxim Integrated Prods., Inc., Deriv. Lit.*, 574 F. Supp. 2d 1046, 1071 (N.D. Cal. 2008) (citing *Durning v. Citibank, Int'l*, 990 F.2d 1133, 1136-37 (9th Cir. 1993)). However, the accrual of claims under the Investment Advisers Act is not necessarily tethered to the purchase or sale of securities. *See Transamerica Mortgage Advisers, Inc. v. Lewis*, 444 U.S. 11, 13 (1979).

In this case, the last fraudulent act complained of is as early as February 11, 2002 or as late as April 29, 2005. If the fraudulent act is the last purchase of securities that occurred on February 11, 2002, no set of facts alleged can cure the limitations defect because the act itself occurred more than five years before plaintiff filed his complaint. If the correspondence of April 29, 2005 is construed as

---

[3] Cases from the habeas corpus context are also instructive. *See Gaston v. Palmer*, 417 F.3d 1030, 1034-35 (9th Cir. 2005) (no tolling available due to mental illness where petitioner timely filed other pleadings during the period of the alleged incompetency); *Blackhurst v. Pugh*, 65 Fed. App'x 103, 105 (9th Cir. 2003) (same).

7

fraudulent, the act itself is within the five year period. However, plaintiff's complaint alleges that he discovered the violations as of 2005. Because plaintiff's complaint was filed more than two years after he discovered the alleged violations, dismissal with prejudice is appropriate.

In sum, plaintiff has not alleged sufficient facts to place any of his claims within the applicable statute of limitations. Granting defendants' motions with leave to amend would be futile as no additional facts, short of allegations flatly contradicting those in the present complaint, can cure the defect. *See Lopez*, 203 F.3d at 1130.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS defendants' motion to dismiss the amended complaint. [Docket No. 26]. Plaintiff's claims for fraud under the Investment Advisers Act, fraud under state law, breach of contract, professional negligence, and breach of fiduciary duty are DISMISSED with prejudice.

**IT IS SO ORDERED.**

Dated: February 6, 2010

SUSAN ILLSTON
United States District Judge